MORRIN v. ROBERT WHITE ENGINEERING WORKS.

(Circuit Court of Appeals, Second Circuit. December 5, 1905.)

1. PATENTS—INFRINGEMENT—REPAIR OR RECONSTRUCTION.

The Morrin patent, No. 463,307, for a steam generator covers an invention, the only novel and patentable feature of which is the peculiar ogee shaped generating tubes, and the replacing of all of such tubes in an old generator constitutes a reconstruction, and not repairs, and infringes the patent.

2. SAME—STEAM GENERATOR—REPLACEMENT OF TUBES BY USER.

The purchaser of a patented machine is entitled to make necessary repairs, and to replace worn out parts not separately patented so long as the identity of the licensed machine is not destroyed, and such repairs may be made by himself or by any one employed by him. In case of a steam generator having a number of tubes of peculiar shape, which constitute the only patentable feature of the structure, while a purchaser and user is not entitled to reconstruct all of such tubes, he has the right to replace one, which becomes burned out or otherwise inoperative without infringement, and the limit of his right between these extremes is a question to be determined on the facts in each case under the above rule.

Appeal from the Circuit Court of the United States for the Eastern District of New York.

The opinion in the court below is reported in (C. C.) 138 Fed. 68, where the facts are fully stated, and all of the leading authorities collected. The validity of claim 2 of the Morrin patent in suit, No. 463,307, was sustained in Morrin v. Lawler (C. C.) 90 Fed. 285, and Morrin v. Edison Electric Co. (C. C.) 90 Fed. 285, affirmed 99 Fed. 977, 40 C. C. A. 204.

Frank Harvey Field and Thomas Ewing, Jr., for appellant.
Henry M. Turk and Clifford E. Dunn, for appellee.

Before WALLACE, TOWNSEND, and COXE, Circuit Judges.

COXE, Circuit Judge. The validity of claim two of the Morrin patent No. 463,307 having been sustained by this court is no longer the subject of controversy. It is as follows:

"2. A steam generator having an upright generator-cylinder provided with tiers of generating-tubes b, of loop-like form, said loop having a pear-shaped outline when seen in plan, and each loop having at one side a lobe formed by the short out-curve at bx and the short in-curve at bxx, the planes of the loops in the tubes being set obliquely to the axis of the generator-cylinder, substantially as set forth."

We fully concur with the judge of the Circuit Court in holding that the tiers of generating tubes of the so-called "Ogee" form constitute the vital element of the combination. It was this which made it patentable. In order to describe the invention intelligently it was necessary to show an upright generator cylinder as a support for the tubes, but the improvement over the prior structures and the advantages resulting therefrom are all found in the new tube which permitted this arrangement in tiers as shown. Omit the tubes and nothing patentable remains. This being so, it follows as a necessary conclusion that the defendant in furnishing practically new sets of tubes for the Terre Haute company and for the American Manufacturing Company, was not merely making repairs, but was, in fact, furnishing a new boiler essentially reconstructed in all of its novel features. This was infringement.

The work done for Wurster & Co. in replacing four tiers of their boiler presents a more doubtful question, but as it is not an unfair inference that the work would have been continued but for the injunction, we are not disposed to disturb the action of the Circuit Court in this particular. If the decree had simply granted an injunction restraining the defendant from infringing the second claim of the Morrin patent by the repetition in the future of the acts complained of in the past, there would be no difficulty in sustaining it. But the decree goes further, and prohibits the defendant not only from making, using and selling new machines and reconstructing old ones, but also from "putting into practice, operation or use, steam generator tubes made according to and containing the pear shape or ogee form, like or similar to those which the said defendant has heretofore made, used or sold, or any steam generators or steam generating tubes containing or embodying the said invention * * * and from counterfeiting or imitating said invention and any part or parts thereof in any way whatsoever."

It is thus manifest that the defendant is enjoined from making the tubes for any purpose whatever, and that the repair of a single tube is within the prohibition of the injunction. In this respect we think the decree is too broad and sweeping. The theory of the rule invoked by the complainant is that a patentee of a combination cannot be deprived of his gains and profits by the conversion of an old and defunct machine under the guise of repairs. If a new machine be needed the patentee is entitled to furnish it, but on the other hand, the purchaser of a patented machine is entitled to make necessary repairs and to replace worn out parts, not separately patented, so long as the identity of the licensed machine is not destroyed. If this be lawful for the owner, it is equally so for the mechanic who is employed to do the work; the latter cannot be held as an infringer for making repairs which the former has an undoubted right to make.

It appears from the record that single tubes frequently are burned out and require replacement. To hold that the owner of a steamship or motor car, employing the Morrin generator, can not have his boiler repaired by the substitution of new tubes for those thus rendered useless without subjecting the mechanic who makes the substitution to the charge of infringement will be contrary to the trend of authority upon this subject. It was not seriously disputed at the argument that the repair of a single tube would not infringe the claim. It is equally clear that replacing the entire series is an infringement. Between these two extremes lies a debatable ground, the precise limits of which cannot be determined in advance. Whether the bounds of legitimate repair have been exceeded must be determined upon the facts of each case as it is presented. The mere fact that the patentee is able and willing to replace the injured part and make the repair is not alone sufficient to vest in him a monopoly of this work. If the purchaser sees fit to make necessary repairs himself, or employs others for that purpose, he has a right to do so, even though it be shown that he has theretofore been guilty of infringement. The commission of an unlawful act in the past does not warrant the prohibition of lawful acts in the future.

The necessity for repairs and the right to make them is recognized in

the catalogue published by the Clonbrock Company, complainant's former licensee, where it is stated that these repairs can be readily done by a good mechanic and that:

"The necessary tools to make any repairs are an ordinary expander tool, hammer and cape-chisel, and a tackle for removing any upper sectional casing above the furnace."

The right is also recognized, inferentially, at least, in the court below, where the learned judge, referring to the work done on the Wurstur boiler, says:

"The supply was not for an emergency. It is not as if a tube or a few tubes had broken, and in an exigency the purchaser applied to a local mechanic to supply them."

The difficulty with the present decree is that the defendant is restrained from doing precisely this work—supplying a broken tube in an emergency. We think work of this character may be lawfully done by the defendant, notwithstanding the fact that it is equipped to do the work speedily and efficiently, and notwithstanding the fact that in the past the work may have gone beyond the limits of justifiable repair. The defendant should not be molested if it keeps within proper limits in the future.

The decree should be modified to conform with these views and, as so modified, should be affirmed, but without costs in this court.