## DENTAL CO. OF AMERICA v. S. S. WHITE DENTAL MFG. CO.

(Circuit Court of Appeals, Third Circuit. July 10, 1920.)

No. 2558.

1. **Patents ⬅259—Making one element of a tooth constituted contributory infringement.**

   A defendant, which under contract with a dental manufacturer made one element of a tooth, which, when joined to another part by such manufacturer, as intended, formed a complete tooth that infringed complainant's patent, *held* a contributory infringer.

2. **Patents ⬅288—Contributory infringer subject to suit in district where acts are committed.**

   A contributory infringer is subject to suit in the district where it committed its part of the infringement and has a regular established place of business.

3. **Patents ⬅328—762,289, for tooth, valid and infringed.**

   The Davis patent, No. 762,289, claim 1, for a crown tooth is for a new combination of old elements which produces a better result than anything in the prior art, was not anticipated and discloses invention; also *held* infringed.

Appeal from the District Court of the United States for the Eastern District of Pennsylvania; Oliver B. Dickinson, Judge.

Suit by the S. S. White Dental Manufacturing Company against the Dental Company of America. Decree for complainant, and defendant appeals. Affirmed.

See, also, 263 Fed. 719.

Charles H. Howson, of Philadelphia, Pa. (Charles D. Woodberry and Odin Roberts, both of Boston, Mass., of counsel), for appellant.

Henry N. Paul, Jr., and Joseph C. Fraley, both of Philadelphia, Pa., for appellee.

Before BUFFINGTON and WOOLLEY, Circuit Judges, and WITMER, District Judge.

WOOLLEY, Circuit Judge. The S. S. White Dental Manufacturing Company, assignee of Letters Patent No. 762,289, granted June 14, 1904, to Frank H. Davis, brought this suit for infringement. The District Court found the first claim of the patent—the only one in issue—valid and infringed. The defendant appealed.

At the threshold of the case there arose a controversy as to what is the subject matter of the patent. Ostensibly the patent is for a "Crown Tooth." The defendant says that in the nomenclature of the art these words describe a definite and well known article of manufacture, adapted and intended to restore a natural crown, and include a tooth composed of a porcelain facing and a metallic backing and also means—such as a post or collar—for attachment to a natural root. The pertinency of this definition appears from the defendant's claim that all it manufactured was porcelain facings of teeth—at most only one element of the invention—and that these facings (even though designed after the keyway of the invention) were not used in crowns thus defined; therefore it did not infringe. Although by its title the patent purports to be for "Crown Tooth," and although the patentee, describing the subject matter of the patent, said in the specification that his invention relates to certain improvements in "crowns for teeth," it should be noted that he also said his invention relates "more particularly to the manner of securing the face-plate of said crown to the backing." The face-plate being the front part of a tooth and the backing being the back part, the two make a tooth, whether later the tooth is put in a crown or used otherwise. To these parts, whether separate or joined in a tooth, the patentee makes no claim of invention. His invention resides in the place of bringing them together and the manner of fastening them together. We think the terms of the patent are broad enough to cover teeth whose parts interlock after the manner of the patent. We therefore lay aside the question of the scope of the invention as limited by the title under which the patent was granted.

But the defendant says even so it did not infringe because it made but one of two parts of the tooth, and because the part it made was as susceptible of innocent use as it was of guilty use. Thomson-Houston Electric Co. v. Ohio Brass Co., 80 Fed. 712, 723, 26 C. C. A.

107; Winne v. Bedell (C. C.) 40 Fed. 463; Edison Light Co. v. Peninsular (C. C.) 95 Fed. 669, 674. Even if this were true, the facts of the case show but one actual and intended use of the facing made by the defendant and that was its use with a backing made by another manufacturer, afterward put together and sold by the latter, thereby justifying to this extent the plaintiff's charge of contributory infringement against the defendant.

[1, 2] The evidence establishes, we think beyond valid dispute, that the defendant made what a mechanic would term the female facing of a tooth, under contract with a dental manufacturer that made the male backing, and that the two parts when later put together made a complete·tooth within the terms of the patent as we construe it. If the tooth with such facing and backing and correlative locking means was the tooth of the patent, the defendant contributed to infringement by making one element with intent that it should be united with the other elements, though later united and completed by another person. Leeds.& Catlin Co. v. Victor Talking'Machine Co., 213 U. S. 325, 29 Sup. Ct. 495, 53 L. Ed. 805. For such act it must answer in a suit instituted in the jurisdiction where it committed its part of the infringement and had a regular and established place of business. Judicial Code, § 48 (Comp. St. § 1030). Thus disposing preliminarily of the defendant's liability as a contributory infringer, if infringement there was, and of the question of jurisdiction of the District Court to entertain an action charging it with such infringement, the case resolves itself into the customary issues of validity and infringement.

[3] The tooth of the patent consists as we have said of a porcelain facing and a metallic backing with an interlocking fastening device intended to overcome the ever present tendency of porcelain facings to split under the strain of mastication. Many inventors had for many years striven to do the thing which Davis claims he has done, and had striven to do it with the same three elements of facing, backing, and interlocking key differently positioned and disposed. In the teeth of some inventors we find the metal key buried and burned into the porcelain facing, the corresponding keyway being in the metal backing. Notable among these were patent No. 566,695 to Mason; patent No. 441,265 to Van Woert; and the Roach Wedgelock Tooth. In the teeth of some of these patents, the key and keyway were parallel to the facing and backing surfaces as in Mason and in the French patent No. 794 to Evslin and Ott. In others the key was positioned at an angle or was shaped with angular sides so that the key in the facing and the keyway in the backing, instead of being parallel to the surfaces of these parts, were on an incline, as in Roach's Wedgelock Tooth and in the Van Woert tooth.

Differing from teeth of this type with the key embedded in the facing, the prior art also contained teeth with key between facing and backing with keyways in both (Evslin and Ott French patent of addition No. 794 and 1115) and key in the backing and keyway in the facing and also keys and keyways differently positioned, one with the key and keyway parallel to the surfaces of the two parts (Thom's British Patent of 1857 and Steele's Interchangeable Tooth) and anoth-

er with the key and keyway parallel thereto but so shaped by angles as to perform (the defendant claims) the exact drawing-in function of the key and keyway put upon an incline to the surfaces of the parts in the Davis invention. Such was the invention of Evslin and Ott, French Patent No. 319,555, to which we shall presently refer.

In all these arrangements teeth split. But they split more readily in some than in others according to the manner and degree in which the pressure, thrust, or strain from mastication was taken up; that is, according as it was confined to and centered in the facing or carried to and spread over the backing.

The thing Davis claims to have done was not to invent a new element in a tooth but to take old elements from the art and put them in new relation. He put the key in the metal backing. There was nothing new about this. He then gave the key thus positioned an old incline of a prior art facing key. Here also there was nothing new. But when he took these two old things from their separate places in the art and put them together, he brought a new thing into the art, unless Evslin and Ott were before him with the invention of their French patent.

What new thing did Davis do, and what new and useful results did he get merely by combining two elements admittedly old? By placing the key on the metal backing instead of on the porcelain facing, he got rid of the risk of face-plate splitting incident to burning in the key. This alone was not new. But in fastening the key in the backing and cutting a corresponding keyway in the facing *on an incline,*—that is, in giving an old backing key the old direction of a facing key—he took from the brittle facing the strain of mastication at the place where the key came into compression with it, and (using the incline of the key to draw the entire surface of the porcelain facing flatly against the entire surface of the metal backing), he relieved the former of the strain of mastication and carried it to and distributed it over the entire surface of the latter. In other words, merely by inclining such a key as was found in Steele, he brought the facing and backing together in such relation that the metal backing instead of the porcelain facing withstood substantially the whole strain and thereby reduced to a minimum the natural tendency of porcelain to split under strain. As we have said, this was new, except, perhaps for the Evslin and Ott invention.

It seems a little thing for Davis to take what was right before him, transpose key from facing to backing and keyway from backing to facing and change the position of both from parallel to incline. Yet, little as it was, it has resulted in this litigation, in which it appears quite conclusively that its achievement—for which both parties are contending vigorously—was an advance in the art which measurably solved the long standing problem of means to prevent splitting of the porcelain part of a tooth.

The District Court found this to be invention. If it is not invention it is only because it was anticipated by the prior invention of Evslin and Ott. These inventors placed a metal key on the backing with a corresponding keyway in the facing of a tooth just as in Davis; but

differing from Davis, neither was inclined. While both key and keyway were parallel to the surfaces of the parts to which they respectively related, the key was triangular in shape in the sense of being broader at the top than at the bottom, and was undercut from its outer surface inward toward its base. The action of such an undercut triangular key when moved in a keyway of corresponding shape (though parallel to the surface of the parts), is to draw the facing toward the backing and on contact to carry the thrust or strain of mastication to the backing in a way suggestive of that of the Davis inclined key and keyway. Admittedly this was close to Davis; and if it had stopped there it might have anticipated his invention. But it happened that the keys as shaped in the two inventions did something more than draw the facing to the backing. The inclined key of Davis drew the facing to the backing and held it there substantially without pressure. Being almost wholly relieved of pressure, the tendency of the facing to split was substantially overcome. This was a good thing. The key in Evslin and Ott also drew the facing to the backing, but in a way that did not so completely relieve it of pressure. Indeed, on the contrary, their wedge key, as it traveled in its keyway, exerted a lateral pressure and spread the facing. This was a bad thing. This action, if left alone, instead of decreasing the tendency of porcelain to split, actually increased it. If not arrested, then, obviously, there was no limit to the splitting action of the Evslin and Ott wedge key with undercut edges. The greater the strain, inevitably the more certain the split. But as we read this patent, it made provision for a floor in the facing intended to act as a stop to the key in its wedging action and to limit the inevitable splitting result. Although such floor or stop to key mechanism with an inherent splitting action operated to reduce the liability of the facing to split, it is clear that such triangular undercut key did not cause practically the entire thrust of mastication to be spread over the entire surface or area of the backing as in the Davis invention, but allowed a part of the thrust or strain to be directed against the porcelain facing itself, weakened as it was by the undercut slot made to receive the wedge-shaped key. This division of strain between facing and backing the Davis key avoids. By its manner of drawing-in, the Davis facing is so positioned against the backing that the backing takes up and cares for substantially the entire thrust. Therefore, we think, that, even if the incline of the Davis key effects the same drawing-in of the Evslin and Ott parallel wedge-shaped key, it does it in a different way, and advances a step farther in solving the problem to which the contesting inventors had addressed themselves, in reducing splitting by more complete strain distribution. Evidenced by practical results it is shown that in the Davis tooth porcelain splitting is reduced to a point that is negligible. There is no evidence of the results of the Evslin and Ott invention, as it had not, so far as the record shows, gone into general use. We find in the Davis tooth patentable invention.

The reasoning by which we have arrived at this conclusion also bears on the issue of infringement, because the alleged infringing tooth (which in physical structure resembles Evslin and Ott not at all), has, like Steele, a key in the backing, but unlike Steele and yet

like Davis, it has the key inclined instead of parallel to the surface of the backing. As an additional feature, the key of the alleged infringing tooth is cone-shaped, the larger end being uppermost; the keyway in the facing being of course correspondingly shaped. The defendant, while admitting that its key, like Davis, is in the backing and inclined, claims it is unlike Davis but is like Evslin and Ott in being cone-shaped. Its conical key, the defendant maintains, is the equivalent of the Evslin and Ott flat triangular undercut key, because, it argues, the curved undersides of its cone-shaped key perform the same drawing-in function in their travel in a corresponding keyway that the undercut sides of the Evslin and Ott triangular key perform in their travel in its corresponding keyway. Regarded from the standpoint of abstract mechanics, this may be true; but considered with reference to the actual mechanism of the defendant's interlocking means and the manner of its operation, we doubt it for several reasons: If the undersides of the defendant's cone-shaped key are the mechanical equivalent of the sharp undercut angles of the Evslin and Ott key as means to draw the facing to the backing, the defendant, we think, does not use them for that purpose. Instead of relying upon the conicity of its key to draw in the facing as Evslin and Ott relied upon the angles of their key to do that thing, the defendant departed from the parallel key of Evslin and Ott and borrowed from Davis the incline of his key—for some purpose, manifestly. As the only purpose or function of the incline of a key with which we are familiar is to draw the facing to the backing and to hold it there, the defendant, in using the incline, draws in the facing by the incline and by the incline alone, as we comprehend the exhibits and read the record. If, however, the incline and undersides of the conical key are so made that they actually cooperate in the drawing-in action, the incline is manifestly the master factor; the undersides of the cone are a superfluous factor; for the incline will produce the result inevitably, while the curved undersides of the conical key will do no more than supplement what the incline would do alone. If the defendant's cone-shaped key were not inclined but were parallel to the surface of the backing, its undersides doubtless would function to draw in the facing on the principle of the undercut angles of the Evslin and Ott parallel key. But the defendant prefers an incline, and in using an incline capable of but one function the inescapable inference is that it uses it for that function. That in its commercial tooth the defendant relies for drawing-in action not upon the conicity of its key but upon the incline of the key borrowed from Davis is shown by evidence that its conical key standing in its inclined position is loose. Being loose, the key as drawing-in means cannot function conically. It can function only by the incline. Therefore, we gather that the key of the defendant's tooth, though conical in shape, is intended to do and actually does nothing different from what is done by the key in the Davis tooth, except as to a feature not in issue.

For these reasons, tediously recited, we are of opinion that in holding the first claim of the patent valid and infringed the District Court committed no error and that its decree must be

Affirmed.