ELLIOTT ADDRESSING MACH. CO. v. McPARLAN et al.

SAME v. BERGH.

Nos. 129, 130. ·

Circuit Court of Appeals, Second Circuit.

Jan. 6, 1936.

Franklin F. Phillips,. of Boston, Mass., and B. W. B. Brown, of New York City, for plaintiff-appellant.

Samuel E. Darby, Jr., of New York City, and Emanuel R. Posnack, of New York City, for defendants-appellees.

Before L. HAND, SWAN, and CHASE, Circuit Judges.

CHASE, Circuit Judge.

The patent in suit, owned by the plaintiff, contains claims reading upon a combination of a stencil and a machine in which to use it. The stencil is composed of a comparatively heavy frame around an opening or window, across which is placed paper of such composition that it is impervious to ink except when cut or broken. Its characteristics are such that blank stencils are readily printed upon in a typewriter and may thereafter be used to reproduce the writing a great many times, often at least ten thousand, before they are worn out. Concededly, none of the elements of the combination are new. The machine is a simple contrivance in which a stack of stencils is placed at one end to be fed between two rollers, one of which is suitably supplied with ink, which press them against the paper to which the printing on a stencil is to be transferred. The stencil itself is that of the plaintiff's expired patent No. 1,068,578, which was issued to H. P. Elliott for an address plate July 29, 1913.

The invention claimed to reside in this combination is simply the lengthening of the rollers between which the stencils pass so that the ends extend a little beyond the window and engage the inner sides of the heavy frame for a short space where the frame is so thin that this engagement does not hold the rollers too far apart to interfere with the work of the stencil. Before this change, the rollers were made only long enough to engage the stencil paper itself, and necessarily placed upon that paper all of whatever strain there might be in operation. The stencil paper in the frames used in machines having what will now be called the short rollers developed some tendency to sag in the frame, so that, when the stencils were stacked before the ink left upon them after use had fully dried, the stencil paper in contiguous frames would sometimes touch and cause smudges. It was to do away with the cause of this stretching of the stencil paper to make it baggy that the rollers were lengthened to transfer the strain to the frames. Whatever invention is embodied in the patent resides in the discovery that the troublesome sagging of the stencil paper was caused by some stretching in going through the machine and the elimination of the trouble in the way stated.

The machines in which the stencils are used are made by the plaintiff and sold outright to buyers at a price which does not cover the cost. There are about 65,000 of them now in use, of which all but about 7,000 were either made with long rollers or have had the original short rollers replaced with the long ones. These machines are of no practical use except with the stencils described; to the supplying of which the plaintiff looks for its profit in sufficient amount to justify its sale of the machines at a loss.

The defendants, McParlan et al., make stencils which duplicate those of the plaintiff and are, of course, also just like those of the above-mentioned expired Elliott patent. Defendant Bergh owns an Elliott machine which he bought second hand of a seller other than the plaintiff and with which he uses stencils made by the defendants in the other case. The defenses to these actions are noninfringement and invalidity, of which the first was sustained below.

The theory which led to the decision that there was no infringement was stated as follows: "The only advance made by the patent is a slight mechanical adjustment in one of the operating parts of the machine; and although this improvement may accomplish a new result in so far as the machine itself is concerned, there is no justification for including the unpatented stencil, which is merely an article serviced by the machine, as an element of the patented combination."

■ This conclusion was reached by the application of the principle that a patentable machine may not be combined with the materials upon which it operates in making its product or otherwise doing its work so as to extend the monopoly to those materials. Motion Picture Patents Co. v. Universal Film Mfg. Co., 243 U.S. 502, 515, 37 S.Ct. 416, 61 L.Ed. 871, L.R.A. 1917E, 1187, Ann.Cas. 1918A, 959; Morgan Envelope Co. v. Albany, etc., Co., 152 U.S. 425, 14 S.Ct. 627, 38 L.Ed. 500. While this rule would obviously apply to the envelopes or other paper on which the stencil was used in the machine, we hardly think it broad enough to apply to the stencils. These were intended for, and capable of, extended recurring use.

We have no doubt that a stencil would often last longer than the desire to use the name and address upon it. So they have the degree of permanent employment with the machine in which they are used that makes them occupy the same relative place in this combination that the disc records did in the invention covered by the combination claims sustained in Leeds & Catlin Co. v. Victor Talking Machine Co., 213 U.S. 325, 29 S.Ct. 503, 53 L.Ed. 816. Like those records, these stencils actively co-operate with the mechanism of which they become a part for the time being and from time to time thereafter for an indefinite period. The machine does not work on them once and for all but with them again and again to bring about a desired result, to the attainment of which their use with the machine as one mechanical whole is essential. We conclude that the stencil is a proper element of the combination, and that, as what the defendants did cannot be confined to the supply and use of replacements, the patent, if valid, has been infringed.

█ We do not, however, find any invention disclosed to be patented. This is by no means only because the structural changes in the old machine were slight. It is relatively unimportant that they consisted merely in using rollers a little longer than before. The important thing is what kind of ability it took to determine that longer rollers would do away with the trouble. If that required the spark of genius which sets the inventor apart from his fellows, it does not matter whether the change needed to supply the remedy was great or small. But in this instance both the location of the cause of the trouble and the application of the means for correction were starkly simple. Since the stencil paper became baggy only after the stencils had been run through the machine, and their bagginess was obviously due to some stretching action upon the stencil paper, the natural course would lead one to look for whatever could have caused the stretching. The rollers being the only part of the machine which acted directly upon the stencil paper, it was inevitable that they should be singled out as the cause, and it followed as a matter of course that the stencil paper should be freed from the troublesome stretching strains by transferring them to the frames through rollers long enough to impinge a little upon the narrow edges of the frames. So the mental effort required to locate the cause of the trouble was as inconsiderable as the physical change needed to supply the remedy. Both in conception and execution whatever advance over the prior art was here shown belongs in the wide field occupied by the skilled mechanic rather than on the plane above which marks the level of invention entitled to patent monopoly. Compare ·Rosenberg et al. v. Carr Fastener Co., 51 F.(2d) 1014 (C.C.A.2); Gillette Safety Razor Co. v. Standard Safety Razor Corp., 64 F.(2d) 6 (C.C.A.2); Powers-Kennedy Contracting Corp. v. Concrete, etc., Co., 282 U.S. 175, 51 S.Ct. 95, 75 L.Ed. 278; Smith v. Magic City Kennel Club, 282 U.S. 784, 51 S.Ct. 291, 75 L.Ed. 707; Smith v. Springdale Amusement Park, 283 U.S. 121, 51 S.Ct. 368, 75 L.Ed. 878.

Decrees affirmed.