### SOUTHWESTERN TOOL CO. et al. v. HUGHES TOOL CO.

#### No. 1625.

Circuit Court of Appeals, Tenth Circuit.
July 1, 1938.

of three patents. Reference will be made to the parties as they were denominated in the trial court. Plaintiff alleged in conventional manner that it owned letters patent Number 1,320,384 issued to Louis A. Godbold and Harold W. Fletcher in 1919, letters patent Number 1,480,014 issued to Floyd L. Scott in 1924, and letters patent Number 1,647,753 issued to F. L. Scott and L. H. Wellensiek in 1927; and that defendants had infringed each and all of them. The defenses pleaded in the answer were invalidity, noninfringement, laches and estoppel; but invalidity was expressly waived at the trial.

The court found that claims 3 and 4 of the first patent, claims 1, 2, 3, and 4 of the second, and claims 2, 3, 4, and 5 of the third were valid; and that defendants had infringed them. Decree was entered enjoining further infringement, and referring the cause to a master for accounting on the question of gains and profits. Defendants appealed.

Each of the patents relates to conical cutters for rotary drills in drilling oil and gas wells. The first is entitled "Drill-Cutter", and recites that it is designed as an improvement upon a patent issued to Hughes in 1910. Drill bits of the kind involved here consist of a bit head having a threaded shaft or spindle integral therewith, on which a plurality of conical shaped cutters are mounted to rotate on the surface at the bottom of the hole in drilling operations. The cutter consists of a bushing threaded on the inside and having a seat or shoulder at its top, a retaining ring threaded on its outer periphery and having a lateral hole, and a cone shaped toothed cutter shell threaded on the inside at the base. Prior to the advent of the patent the parts were assembled and disassembled in the field, each being attached or detached separately. In assembling, the retaining ring was first positioned in the seat or shoulder on the bushing, and the bushing was then threaded upon the shaft. The cutter shell was then positioned on the bushing and threaded into engagement with the retaining ring. In disassembling the inverse order was followed. The method was inefficient in that the bushing was exposed to dirt or water containing grit and mud. The invention of the patent is directed to the assembly of the three parts as a unit upon the shaft, and to the removal of them as a unit. It discloses holes in the cutter shell, retaining ring, and bushing, in alignment. The bushing is inserted within

Arthur C. Brown, of Kansas City, Mo. (Herbert K. Hyde, of Oklahoma City, Okl., on the brief), for appellants.

George I. Haight, of Chicago, Ill. (Jesse R. Stone, of Houston, Tex., and B. A. Ames, of Oklahoma City, Okl., on the brief), for appellee.

Before LEWIS, BRATTON, and WILLIAMS, Circuit Judges.

BRATTON, Circuit Judge.

This is an action instituted by Hughes Tool Company against Southwestern Tool Company and Emil Dufek for infringement

the recess in the cutter shell; the retaining ring is then positioned on the shoulder of the bushing and threaded into the cutter shell. A pin or wrench is then inserted through the aligned holes in the cutter shell and retaining ring, and into the hole in the bushing. The three parts are thus held together and mounted for operation by means of the bushing being threaded upon the shaft. The pin or wrench is then withdrawn and the holes are closed by a set screw or locking pin inserted through the opening in the cutter shell and threaded within the hole in the retaining ring, thus holding the cutter shell and retaining ring rigidly together and permitting their rotation around the bushing. The method disclosed in the patent enables assembly in the shop and ready mounting of the three parts as a unit, also dismounting as a unit and disassembly in the shop.

The second patent is entitled "Self-Cleaning Roller Drill", and is directed to the formation of the teeth upon each cutter. It discloses an arrangement and spacing of teeth in such manner that when the cutters are mounted on the shaft the teeth will interfit without contact with each other, and will clear each other of material having a tendency to gather and adhere to them. The first and second patents were under consideration in Hughes Tool Co. v. International Supply Co., 10 Cir., 47 F.2d 490, the court holding that the two claims in the first were valid and infringed, and that the four in the second were not infringed.

The third patent is likewise directed to the formation of the teeth on the cones. It discloses teeth arranged in circumferential rows with apparent parallel sides, the teeth on one cutter being distanced slightly different from the base of the cone than those on the other, and the spaces between the teeth being cut deep to provide long, narrow, penetrating teeth, referred to as chisels. The advantages claimed for the construction are assistance in the rotation of the cutter and more effective penetration of the teeth.

The teeth wear rapidly during operation, the degree of rapidity depending upon the kind of formation being penetrated. A cone lasts from eight to forty-eight hours, the average life being from twelve to fifteen hours. Until shortly before the institution of this suit plaintiff sold complete bits including the cones without restriction or reservation in respect to replacement of cones; and it sold cones or cutters separately for use in replacements. In most instances deteriorated cones were replaced with new ones, but in some rebuilt or restored cones were used, and plaintiff rebuilt and restored cones for sale as such replacements.

The offending acts of infringement upon which the decree rests consist of purchasing worn out cones from drillers and junk dealers, rebuilding or restoring the teeth, sometimes furnishing new bushings and new retaining rings, and then selling them back to customers of plaintiff for reuse in connection with the bit heads originally purchased from plaintiff.

The finding of infringement is challenged on the ground that the patents embrace a combination of elements, all of which are deemed in law to be material; and that defendants do not employ all of them or their mechanical equivalent. As we understand it, the argument is that a cone consists of four elements—the bushing, the cutter shell, the retaining ring, and the device for holding the three together while the unit is being attached to or detached from the shaft; and that defendants do not use or employ the last one. The contention cannot be sanctioned. The cone consists of three constituent elements. They are the bushing, the toothed cutter, and the retaining ring; and defendants use all of them. The device for holding them together as a unit for attachment or detachment is merely a wrench or tool, not a constituent element of the device. But it would be of no avail to defendants to regard the wrench or tool as an element. They purchase worn out and discarded cones from contractors and junk dealers, take them to their shop, burn material from the face of the cutter down to surface, add new metal on the face by welding, cut new teeth, sharpen the teeth, replace the bushings and retaining rings with new ones, and then sell them back to customers of plaintiff with the intention and purpose of reuse or further use in connection with the bit heads purchased from plaintiff. The furnishing of one or more of several parts of a patented combination with the intention and purpose that the part or parts furnished shall be assembled with the other parts and the combination used as a unit is contributory infringement of the patent covering the complete combination. Leeds & Catlin Co. v. Victor Talking Machine Co., 213 U.S. 325, 29 S. Ct. 503, 53 L.Ed. 816; Dental Co. of America v. S. S. White Dental Manufacturing Co., 3 Cir., 266 F. 524; Elliott Addressing

Machine Co. v. McParlan, 2 Cir., 80 F.2d 870.

It is further contended that the finding of infringement cannot be sustained for the reason that the evidence fails to show that defendants intend to or actually shape, arrange, and mount the teeth on their cones in substantial identity with the disclosures of the second and third patents. Cones manufactured and sold by plaintiff, and cones sold by defendants were offered in evidence and are before this court. There was testimony by an expert witness that the construction of the teeth was exactly alike; that there was no particular difference between them; and that the only difference was in the use of rebuilt metal. There may be colorable differences between the conjoint invention of the patents and the cones sold by defendants, but they are insubstantial. A colorable departure from a patent does not avoid infringement. Sanitary Refrigerator Co. v. Winters, 280 U.S. 30, 50 S.Ct. 9, 74 L.Ed. 147; Skinner Bros. Belting Co. v. Oil Well Improvements Co., 10 Cir., 54 F.2d 896.

Defendants assert that their acts constitute permissible repair and restoration of worn cones—not infringing manufacture or remaking in the sense of reconstruction. The nature and extent of the work done upon the cones has already been detailed. When a patentee sells a patented article without restrictions it passes outside the monopoly and the owner may use or sell it to another without liability for infringement, Cream Top Bottle Corp. v. Bailes, 10 Cir., 62 F.2d 714; and the purchaser of a machine or mechanical device consisting of several parts and covered by a patent on the whole as a unit has the right to repair or replace worn or broken parts, provided the machine as a whole still retains its identity and the parts repaired or replaced do not so dominate the structural substance of the whole as to constitute making the machine or device anew, and provided further that the parts so repaired or replaced are not separately covered by a patent. Here the first patent is for the assembly of a bushing, a retaining ring, and a cutter; and the second and third patents relate to teeth on the cutter. The defendants furnish new bushings and new retaining rings, and they add new teeth to cutters. They furnish parts that are specifically covered by the patents and then sell the cones for reuse. That is well outside the domain of permissible repair and restoration, and plainly constitutes infringement. American Cotton-Tie Company v. Simmons, 106 U.S. 89, 1 S.Ct. 52, 27 L.Ed. 79; Shickle, Harrison & Howard Iron Co. v. St. Louis Car-Coupler Co., 8 Cir., 77 F. 739; Goodyear Shoe Machinery Co. v. Jackson, 1 Cir., 112 F. 146, 55 L.R.A. 692; Morrin v. Robert White Engineering Works, 2 Cir., 143 F. 519; National Malleable Casting Co. v. American Steel Foundries, C.C., 182 F. 626; Automotive Parts Co. v. Wisconsin Axle Co., 6 Cir., 81 F.2d 125.

The remaining question is whether defendant Dufek is personally liable for damages arising out of the infringement. Defendant Southwestern Tool Company is a corporation organized under the laws of Texas, with its principal office and place of business at Fort Worth; and Dufek is its president. An officer of a corporation participating in the corporation's manufacture and sale of an infringing article is not personally liable for damages flowing from such piracy unless he acts wilfully and knowingly, or uses the corporation as an instrument to carry out his own deliberate infringement, or knowingly uses an irresponsible corporation with the intended purpose of avoiding personal liability. Dufek testified that he resided in Oklahoma City; that the defendant corporation did not have an office there; that application had been made for a charter in Oklahoma for a corporation to be known as the Southwestern Tool Company of Oklahoma; that he devoted all of his time to the selling of the cutters, and that a named person at Tonkawa, Oklahoma, was connected with him; that there was no one at his residence to take orders for cutters during his absence; that no one sold them but himself; that he went around to contractors and junk dealers and bought worn out cones; that they were then shipped or he hauled them to the shop of the corporation at Fort Worth where they were put in condition for resale; and that some remained there until they were delivered to purchasers, and some were freighted to Oklahoma City and stored until needed. He said "I take the cone in * * *. I take it into the shop and rebuild it. * * * We take it in the shop and burn the grease all off of it so as to get down to the surface. We rebuild it with an acetylene torch. * * * The cone is absolutely worn out when I pick it up to where it won't dig and I resharpen them." The testimony and the inferences reasonably to be drawn from it point to the conclu-

sion that during the period in question Dufek dominated the corporation; that he wilfully and knowingly participated in the acts of infringement; and that he used the corporation as an instrument to carry out his own deliberate infringement. He is, therefore, jointly liable with the corporation for the damages resulting from the wrongful acts. National Cash-Register Co. v. Leland, 1 Cir., 94 F. 502; Hitchcock v. American Plate Glass Co., 3 Cir., 259 F. 948; Dangler v. Imperial Machine Co., 7 Cir., 11 F.2d 945; Claude Neon Lights, Inc., v. American Neon Light Corporation, 2 Cir., 39 F.2d 548; Denominational Envelope Co. v. Duplex Envelope Co., 4 Cir., 80 F.2d 186; Federal Trade Commission v. Standard Education Society, 2 Cir., 86 F.2d 692.

The decree is affirmed.