**WATSCO, INC., Plaintiff,**

v.

**HENRY VALVE COMPANY, Defendant.**

United States District Court
S. D. New York.
July 14, 1964.

Samuel J. Stoll, Jamaica, N. Y., for plaintiff.

Burgess, Ryan & Hicks, New York City, by H. H. Hamilton, New York City, of counsel, for defendant.

EDELSTEIN, District Judge.

This is an action for patent infringement. Defendant, a corporation organized pursuant to the laws of Illinois, has moved, pursuant to Rule 12(b), Fed.R. Civ.P.[1] 28 U.S.C. to dismiss the complaint on the ground that venue in the Southern District of New York is improper. See 28 U.S.C. § 1400(b).[2] In the alternative the plaintiff has moved to transfer the action to what it considers to be a more convenient forum, the Northern District of Illinois, pursuant to 28 U.S.C. § 1404(a).[3]

The affidavits and memoranda submitted by the parties reveal that there is no dispute with respect to the following facts: Defendant is an Illinois corporation having its office and principal place of business in Melrose Park, Illinois. Defendant manufactures and sells tools and components for refrigeration and air-conditioner systems such as refrigerant flow controllers, valves, refrigerant conditioners, strainers, dryers and gauges. All manufacturing is done at its home office in Illinois. The patent in suit is #2,827,913 and involves the invention of a "self-tapping valve for Tubes, Pipes, Tanks and other conduits and Containers."[4] The self-tapping

1. Fed.R.Civ.P. 12(b), dealing with defenses to pleadings, provides: "(b) *How Presented.* Every defense, in law or fact, to a claim, * * * counter-claim, cross-claim, or third-party claim, shall be asserted in the responsive pleading thereto if one is required except that the following defenses may at the option of the pleader be made by motion: * * * (3) improper venue * * *."

2. 28 U.S.C. § 1400(b) provides: "*Patents and copyrights* * * * Any civil action for patent infringement may be brought in the judicial district where the defendant resides, or where the defendant has committed acts of infringement and has a regular and established place of business."

3. 28 U.S.C. § 1404(a) provides: "*Change of venue.* For the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought."

4. Complaint, p. 2. See defendant's Exhibit B.

valve operates along a tubular line and is mounted along the tube and a removable tool is engaged with the valve. The tool "detachably engages a portion of a valve needle forming a part of the self-tapping and self-sealing valve" which opens and closes the valve during its operation. The defendant, as part of its manufacturing operation, manufactures a SWING-TAP tube piercing valve which is made to operate together with a tubular line for mounting the valve and a swivel control valve.

Defendant has sales representatives located throughout the country who operate from their homes or from their privately maintained offices. Defendant does have, however, one district sales office in the United States, at 420 Lexington Avenue, in New York City, within the Southern District of New York. This office, which is the defendant's only other office besides its home office in Melrose Park, Illinois, was established in 1945. It consists of two private inner offices, and a reception and entrance area. These offices encompass approximately 600 square feet of office space. A full-time stenographer staffs the office and the office is supplied with three desks, telephone service, a type-writer, copy machine and three four-drawer file cabinets.

The New York sales office is under the supervision of defendant's Eastern District Sales Manager, C. W. Hudzietz. The stenographer, sales manager and a sales representative, J. A. Endweiss, Jr., occupy the office on a full-time basis. Both Mr. Hudzietz and Mr. Endweiss solicit orders in New York City and "adjacent areas" and both maintain their homes in close-lying suburbs of New York City. Defendant's solicitation of orders along the Eastern seaboard of the United States is directed by the New York City sales office. In addition to the District Sales Manager, two other sales representatives, whose territories range from North Carolina to Connecticut, report to the New York office. However, these latter two representatives report to the New York office only once or twice within a three month period. All of the sales personnel are full-time employees and are paid a fixed salary and commission. Defendant withholds income for payment of the New York State Income Tax and files unemployment tax returns with the State of New York as to all employees working out of the New York office.

Defendant is the lessee of the New York office and makes rental payments from its home office. The defendant's name is carried on the office door and in the New York City telephone directory. Defendant has no bank account in New York and maintains only a small petty cash fund of about $50 for the purchase of postage and other office incidentals. Sales within the Southern District of New York, which are made primarily to wholesalers, account for less than 3 percent of the defendant's total yearly business. The defendant points out—and lays heavy stress on this fact—that the New York sales office has no authority to accept orders which may result from the solicitations of its sales personnel. The home office controls the completion of the sales orders and has authority for the setting of prices, the approval of customer credit, the acceptance of orders, the shipment of the products, and the billing of customers directly. The New York office solicits orders by telephone and by mail and is not used as a showroom. The presence of a customer in the office is termed by the defendant to be "rare." The defendant characterizes its New York City office as basically a message center, as a meeting place, and as a place where customers can be solicited for orders personally.

Defendant admits that as a result of its solicitation activity some of the allegedly infringing SWING-TAP Tube Piercing valves have been sold to customers located within the Southern District of New York, although the orders for the valves were accepted in Melrose Park, Illinois. It also admits that sales representatives are furnished with sample products and catalogs, although no stock or inventory of products is maintained in New York City. Plaintiff al-

leges, on information and belief, that considerable quantities of the allegedly infringing Swing-Tap Tube Piercing Valves were distributed as samples, by the defendant's New York City office.

Plaintiff is a Florida corporation with its office and principal place of business in Hialeah, Florida. The patented device was designed and developed by employees of two New York corporations. These corporations are located in Queens County, which is in the Eastern District of New York. Plaintiff contends, without identifying the employees or their domicile, that employees who worked on the design and development of the device would be required as witnesses for the plaintiff. The defendant, in turn, claims that all its witnesses and business records which may be relevant to this action are located in Illinois.

It is well established that venue in patent infringement actions is governed exclusively by 28 U.S.C. § 1400(b). Fourco Glass Co. v. Transmirra Products Corp., 353 U.S. 222, 77 S.Ct. 787, 1 L.Ed.2d 786 (1957); see Stonite Products Co. v. Melvin Lloyd Co., 315 U.S. 561, 62 S.Ct. 780, 86 L.Ed. 1026 (1942). Section 1400(b) provides that "Any civil action for patent infringement may be brought in the judicial district where the defendant resides, or where the defendant has committed acts of infringement and has a regular and established place of business." Since defendant is incorporated and has its principal place of business in Illinois it is clear that it does not "reside" for venue purposes in this district. Fourco Glass Co. v. Transmirra Products Corp.,

supra at 226, of 353 U.S., 77 S.Ct. 787; Sperry Products, Inc. v. Association of American Railroads, 132 F.2d 408, 411, 145 A.L.R. 694 (2d Cir. 1942) (L. Hand, J.); See Neirbo Co. v. Bethlehem Shipbuilding Corp., 308 U.S. 165, 60 S.Ct. 153, 84 L.Ed. 167 (1939). Therefore, since the second clause of § 1400(b) is worded conjunctively, plaintiff has the burden of showing that both elements are present in this district in order to predicate venue here. See Clearasite Headwear, Inc. v. Paramount Cap Manufacturing Co., Inc., 204 F.Supp. 4 (S.D.N.Y. 1962).

35 U.S.C. § 271 enumerates the various categories of activity that constitute patent infringement and it has been held that an act of infringement may be established by the manufacture, use or sale of the allegedly infringing item, 35 U.S.C. § 271(a) [5] or by the sale of a material component of a patented item with knowledge that the component is especially made or adapted for use in a combination infringing article. 35 U.S.C. § 271(c). Dental Co. of America v. S. S. White Dental Mfg. Co., 266 F. 524, 525–26, (3rd Cir. 1920); Dover Corp. v. Fisher Governor Co., 221 F.Supp. 716 (S.D.Tex.1963). Defendant argues that plaintiff's patent is directed towards a combination which consists of a self-tapping valve, mounted on a tubular line, together with a removable tool controlling the valve. Defendant contends that because it has sold only what corresponds to but one component of the patented article—the SWING-TAP self-tapping valve—to customers within this district, that the sale of one component alone does not constitute an act of infringe-

---

5. 35 U.S.C. § 271 provides in pertinent part:

"*Infringment of patent.*

"(a) Except as otherwise provided in this title, whoever without authority makes, uses or sells any patented invention, within the United States during the term of the patent therefor, infringes the patent.

"(b) Whoever actively induces infringement of a patent shall be liable as an infringer.

"(c) Whoever sells a component of a patented machine, manufacture, combination or composition, or a material or apparatus for use in practicing a patented process, constituting a material part of the invention, knowing the same to be especially made or especially adapted for use in an infringement of such patent, and not a staple article or commodity of commerce suitable for substantial noninfringing use, shall be liable as a contributory infringer."

ment. Defendant contends that it has not sold the SWING-TAP tube-piercing valve in combination with the removable tool—the "swivel control valve"—that it also manufactures. Defendant's control valve functions in the same manner as the removable tool and tool housing on plaintiff's device. Since it claims that it has not sold the "patented article" in total combination to third parties in this district, it contends, therefore, that it has not committed an act of infringement here.

■ The availability of the doctrine of contributory infringement, which is argued by both parties in their memoranda, renders it unnecessary to pass upon the accuracy of defendant's claim that only a portion of defendant's article was sold in this district. Under the doctrine of contributory infringement, a party is liable if it sells a component of a patented combination, which constitutes a material part of the invention, knowing "that the combination for which his component was especially designed was both patented and infringing." Aro Mfg. Co., Inc. v. Convertible Top Replacement Co., Inc., 84 S.Ct. 1526 (1964). 35 U.S.C. § 271(c). Infringement, as it is used in this portion of the statute, has been construed by the courts to mean "direct infringement." See Mercoid Corp. v. Mid-Continent Inv. Co., 320 U.S. 661, 677, 64 S.Ct. 268, 88 L.Ed. 376 (1944). Defendant knows and does not deny that its SWING-TAP self-tapping valve must be used in combination with a tubular conduit and a removable control in order to be of utility. But it does deny that it sold the valves in this district. If the defendant did in fact sell the self-tapping valves to a third party with knowledge that the said valves could be used only on a tubular line with a removable control, it might result in a direct infringement of the plaintiff's patent by the ultimate user by what has been termed a reconstruction of the patented combination to which the sale of defendant's valves would "contribute." See Aro Mfg. Co. v. Convertible Top Replacement Co., 365 U.S. 336, 341–346,

81 S.Ct. 599, 5 L.Ed.2d 592 (1961); Wilson v. Simpson, 50 U.S. (9 How.) 109, 122–126, 13 L.Ed. 66 (1850). Somewhat differently stated, such a sale, if demonstrated upon appropriate proof, might very well constitute a contributory sale which is an "act of infringement" within the meaning of 35 U.S.C. § 271(a) (b) and 28 U.S.C. § 1400(b).

The defendant seeks to escape the impact of the contributory infringement doctrine by urging that it cannot be charged as a contributory infringer since the allegations of the complaint do not specifically charge, *in haec verba* contributory infringement but allege only the "manufacture and sale" of the self-tapping valves. Defendant contends that only if plaintiff's complaint is amended to charge contributory infringement can it be charged with an infringing sale. And, defendant's argument continues, even if the complaint is amended or is construed to encompass a charge of contributory infringement by the sale of a component to direct infringers, venue based on such sales would still be improper since any and all orders for the SWING-TAP self-tapping valve were accepted at the defendant's home office in Illinois and therefore no "sale" was effected within the Southern District of New York.

■ Defendant's contention concerning the plaintiff's failure specifically to allege contributory infringement in the complaint should serve as no bar to plaintiff proving, at trial, that the self-tapping valves in the hands of third parties resulted in a direct infringement for which defendant should be held responsible. Although "contributory infringement" is not specifically alleged, it may properly be proved under the allegations of the complaint. A fair reading of the complaint indicates that the allegation of sale of self-tapping valves implies that they were necessarily sold to third parties and "it is enough to point out that the claim in the complaint is not so restricted and the court will not assume that the proof will be so limited." Jones v. Radio Corporation of America, 131

F.Supp. 82, 84 (S.D.N.Y.1955). Moreover, two fundamental rules of construction compel this court to the conclusion that the claim of contributory infringement is properly before it on defendant's motion to dismiss for improper venue. First, it is basic to the liberal pleading philosophy of the Federal Rules that technical niceties of pleading should not be exalted but that instead the sufficiency of the complaint should be tested by whether it gives fair notice of the complainant's claim to the opposing party. See Fed.R.Civ.P. 8(a). Defendant's discussion in its memoranda that the doctrine of contributory infringement may well be raised indicates an awareness which would militate against any possible claim of surprise. And, in any event, a liberal construction of the complaint leads to the conclusion that the sale of a component to a direct infringer could well be proved under its allegations, construing the complaint liberally, as the court must do.[6]

▇▇▇▇ Additionally, amendment as a matter of right is still available to the plaintiff. See Fed.R.Civ.P. 15(a) and, in any event, an amendment to conform

to the evidence is possible at trial. Fed. R.Civ.P. 15(b).[7] See Transmirra Prod. Corp. v. Magnavox Co., 110 F.Supp. 676, 678 (S.D.N.Y.1953). The defendant should be cognizant that the court, at this juncture, is not passing on the merits of the plaintiff's claim. The court, in deciding whether a complaint should be dismissed for improper venue, employs a different standard to determine whether the "degree of use required" is sufficient to sustain venue, than it does in deciding whether or not the "use" is sufficient to sustain the infringement claim. See Kaz Mfg. Co. v. Cheseborough-Pond's Inc., 317 F.2d 679 (2d Cir. 1963). The test for establishing patent *venue* is less strict than the standard required to establish patent *infringement* for otherwise a disposition on the venue question would also amount to a disposition on the merits whenever venue is tested. See Ronson Art Metal Works, Inc. v. Brown & Bigelow, Inc., 104 F.Supp. 716, 725 (S.D.N.Y.1952).

Thus, under this liberal test, defendant's admissions in its papers that sales of a component were made in the Southern District of New York would consti-

6. Par. 9 of the complaint reads as follows: "Recently, the exact date being presently unknown to plaintiff, defendant commenced to manufacture and sell self-tapping vavles virtually identical with those which plaintiff had previously supplied to defendant and embodying the invention covered by the claims of said patent in suit, such manufacture and sale being without the consent of the plaintiff and in infringement of said patent."

7. Fed.R.Civ.P. 15(a) and (b) provides: "(a) *Amendments*. A party may amend his pleading once as a matter of course at any time before a responsive pleading is served or, if the pleading is one to which no responsive pleading is permitted and the action has not been placed upon the trial calendar, he may so amend it at any time within 20 days after it is served. Otherwise a party may amend his pleading only by leave of court or by written consent of the adverse party; and leave shall be freely given when justice so requires. A party shall plead in response to an amended pleading within the time remaining for response to the original pleading or within

10 days after service of the amended pleading, whichever period may be the longer, unless the court otherwise orders. "(b) *Amendments to Conform to the Evidence*. When issues not raised by the pleadings are tried by express or implied consent of the parties, they shall be treated in all respects as if they had been raised in the pleadings. Such amendment of the pleadings as may be necessary to cause them to conform to the evidence and to raise these issues may be made upon motion of any party at any time, even after judgment; but failure so to amend does not affect the result of the trial of these issues. If evidence is objected to at the trial on the ground that it is not within the issues made by the pleadings, the court may allow the pleadings to be amended and shall do so freely when the presentation of the merits of the action will be subserved thereby and the objecting party fails to satisfy the court that the admission of such evidence would prejudice him in maintaining his action or defense upon the merits. The court may grant a continuance to enable the objecting party to meet such evidence."

tute an act of infringement, but for the continued viability of the doctrine that in order to constitute an infringing "sale," the sale must be completed and consummated within the district where venue is sought to be established. That is to say, when orders are accepted beyond the bounds of the district where venue is sought to be founded courts have held that no sale has occurred within the district, despite the fact that all solicitations, negotiations and delivery of the product took place within the district, and that the product was physically present within the district. There is a line of cases that still hews to what on its face appears to be a doctrine of doubtful reason. See W. S. Tyler Co. v. Ludlow-Saylor Wire Co., 236 U.S. 723, 35 S.Ct. 458, 59 L.Ed. 808 (1915), (alternative holding); Bulldog Elec. Prod. Co. v. Cole Elec. Prod. Co., 134 F.2d 545 (2d Cir. 1943), petit. for mand. denied, 322 U.S. 714, 64 S.Ct. 1256, 88 L.Ed. 1556 (1944); Cutler-Hammer Mfg. Co. v. Curtis & Carhart, Inc., 296 F. 117 (2d Cir. 1924) (relying on Uniform Sales Act definition of "sale"); Dow Chemical Co. v. Metlon Corp., 281 F.2d 292 (4th Cir. 1960); Endrezze v. Dorr Co., 97 F.2d 46 (9th Cir. 1938); Kamkap, Inc. v. Worldsbest Indus. Inc., 140 F.Supp. 854 (S.D.N.Y.1956); Welding Eng'rs. v. Aetna-Standard Engineering Co., 169 F.Supp. 146 (W.D.Pa.1958); United Autographic Register Co. v. Egry Register Co., 219 F. 637 (N.D.Ill.1915); Chadeloid Chemical Co. v. Chicago Wood Finishing Co., 180 F. 770 (C.C.N.Y.1910) (L. Hand, J.); Westinghouse Electric & Mfg. Co. v. Stanley Electric Mfg. Co., 116 F. 641 (C.C.N.Y.1902).

But the completed act doctrine appears to be moribund and, recently, courts have begun to chip away at what, under close analysis, appears to be the shaky foundation of the doctrine. See Union Asbestos & Rubber Co. v. Evans Products Co., 328 F.2d 949, 951–952 (7th Cir. 1964); Gwynne v. Michael Flynn Manuf. Co., 227 F.Supp. 357 (S.D.N.Y.1964); Stiegele v. Jacques Kreisler Mfg. Corp., 213 F.Supp. 494 (S.D.N.Y.1962);

Sherman Paper Products Corp. v. Sorg Paper Co., 161 F.Supp. 44, 45 (E.D. Mich.1958) (dictum); Ronson Art Metal Works v. Brown & Bigelow, Inc., supra. These courts have lead a quiet but steady revolt against the consummated sale doctrine and have held that a completed sale within the district is not required when there has been continuous solicitation of orders in addition to exhibitions, demonstrations, or the physical presence of the product within the district. Cf. Welding Eng'rs. v. Aetna-Standard Eng. Co., supra at 149 of 169 F.Supp.

The Union Asbestos case, the most recent expression on the subject, traced the genesis of the "consummated sale" doctrine and found the "notion" was derived from the formulation of a rule by a single district judge of the old Circuit Court of the Southern District of New York in the Westinghouse case in 1902. The rule was pronounced in Westinghouse without the citation of authority. See 116 F. 641 (C.C.S.D.N.Y.1902); Union Asbestos & Rubber Co. v. Evans Products Co., supra at 952 of 328 F.2d. Subsequent to Westinghouse, the Supreme Court of the United States decided the W. S. Tyler Co. case in 1915 and cited the Westinghouse case in its statement that a sale consummated outside the district where the suit was brought was not an act of infringement for venue purposes. Through the years, the Tyler decision has served as the principal refuge for courts whose decisions employing the consummated sale rationale required authoritative support. But a close examination of Tyler, which is a one and one-half page memorandum decision, reveals that the Supreme Court's discussion of the consummated sale doctrine was not vital to its decision of the venue issue, for the Court there held in the first paragraph that the defendant did not have a regular and established place of business within the district. The Court then added in the second and concluding paragraph of W. S. Tyler that no act of infringement had occurred since the sale was consummated outside the district. Thus, the authority of Tyler as support

for the proposition that a consummated sale is required is at best a doubtfully buttressed alternative holding or dictum. Cf. Clearasite Headwear Inc. v. Paramount Cap Manufacturing Co., Inc., supra at 5 of 204 F.Supp. Yet, this *ipse dixit* by the Supreme Court has served as the authority for courts to dismiss patent infringement suits for improper venue even though the defending corporations had carried on extensive solicitations within the district and had actually transported and demonstrated the product within the district at the same time but had been so sophisticated as to require the consummation of their sales at their home office outside the district.

The court cannot ignore that the modern trend of the cases seek to limit the impact of this artificial "title-passing" doctrine which, at best, appears to be an anachronism when it is removed from the context of commercial transactions. This court does not accord the title-passing concepts of sales and contract law the "magical significance" which has been accorded them by other courts. See Ronson Art Metal Works v. Brown & Bigelow, Inc., supra at 725 of 104 F.Supp. In Union Asbestos & Rubber Co. v. Evans Prod. Co., supra at 952 of 328 F.2d, the court stated:

> " * * * [T]he term 'a regular and established place of business' in § 1400(b) should not 'be narrowed or limited in its construction.' The same should be said of 'acts of infringement' the other element of venue in § 1400(b). *Therefore, the technicalities of sales law should not control whether defendant's degree of conduct within the district was sufficient to constitute 'acts of infringement' for venue purposes.* The degree of selling in the case before us is a sufficient impairment of plaintiff's 'right to exclude others from making, using or selling' its invention so as to constitute an act of infringement within the district for venue purposes." (Emphasis supplied; footnotes omitted.)

This court is in accord with Union Asbestos as well as Stiegele v. Jacques Kreisler Mfg. Co., supra, and Gwynne v. Michael Flynn Manuf. Co., supra. These latter two cases held that a regular and systematic program of solicitation of orders by sales staff of the defendant coupled with the systematic exhibition and demonstration of the product, or the availability of product samples and catalogues constituted sufficient selling activity within the district to constitute acts of infringement by sale for venue purposes, even though, technically, the sales were in both cases consummated outside the district. These cases recognize that a patentee acquires the "right to exclude others from making, using, or selling" its invention, 35 U.S.C. § 154, and the solicitation activities of the defendant herein and the presence and delivery of its products here are, therefore, no less a derogation and interference with the patentees exclusive right in this district, merely because the order is accepted in another state. It does not comport with reason to require a plaintiff patentee to chase the alleged infringer to the defendant's home district simply because sales orders are approved there, while all the while sales representatives of the defendant are continually present in the district and the alleged infringing device is delivered and displayed within the district. The term "act of infringement" should not be narrowed and limited in its construction. See Shelton v. Schwartz, 131 F.2d 805, 808 (7th Cir. 1942). A foreign corporation should not be permitted to escape suit in a district based on alleged infringing sales, when it has systematically and continually solicited orders within the district and has permitted the product to be physically present in the district by equipping its sales representatives with product samples and catalogues for use in demonstration of the product within the district. See also Latini v. R. M. Dubin Co., 90 F.Supp. 212 (N.D.Ill.1950). This liberal approach was applied in Transmirra Prod-

ucts Corp. v. Magnavox Co., supra at 678 of 110 F.Supp., where the Court, in speaking of the defendant's participation in a trade show stated: "Since the product was 'manned' by the defendant's employees, and the display supervised by its advertising department, the inference is inescapable that there was a substantial use of the product in this district designed to increase the sales and profits of the defendant's business."

 The second prong of defendant's motion to dismiss, on which plaintiff also bears the burden, is defendant's claim that it does not have a "regular and established place of business" in the Southern District of New York. Since the 1915 Tyler decision a line of cases has developed which holds that solicitations alone, no matter how long continued and how regularly practiced, cannot constitute a "regular and established place of business." See General Radio Co. v. Superior Electric Co., 293 F.2d 949 (1st Cir. 1961); Endrezze v. Dorr Co., supra, (alternative holding); Elevator Supplies Co. v. Wagner Mfg. Co., 54 F.2d 937 (S.D.N.Y.1931); cf. Brevel Products Corp. v. H. & B. American Corp., 202 F.Supp. 824 (S.D.N.Y.1962) (independent contractors working on a commission basis). The Court of Appeals for the District of Columbia, the Seventh Circuit, and several district courts, however, have not deemed themselves bound by the Tyler case and its progeny on facts almost indistinguishable from the case now before this court. Urquhart v. American-La France Foamite Corp., 79 U.S.App.D.C. 219, 144 F.2d 542, cert. denied, 323 U.S. 783, 65 S.Ct. 273, 89 L.Ed. 625 (1944); Shelton v. Schwartz, supra; Gwynne v. Michael Flynn Manuf. Co., supra; Stiegele v. Jacques Kreisler Mfg. Corp., supra; Kerr v. Port Huron Sulphite & Paper Co., 157 F.Supp. 685 (D.N.J.1957); Latini v. R. N. Dubin Corp., supra; cf. Remington Rand Business Service, Inc. v. Acme Card System Co., 71 F.2d 628 (4th Cir. 1934) (saleable stock and servicing in addition to solicitation); Transmirra Products Corp. v. Magnavox Co., supra. Thus the tend-

ency has been to prevent corporations from interposing their foreign citizenship as a shield to venue when sufficient contacts exist with the forum in which suit has been brought. Clearly, the standard of sufficient contacts has been met here. There has been a sufficient showing of a systematic, regular and continuous course of business activity carried on from a permanent location in New York City to constitute a "regular and established place of business" of the defendant. See Stiegele v. Jacques Kreisler Mfg. Co., supra at 496 of 213 F.Supp. Facts closely resembling those in the instant case were considered in the recent Gwynne case: there too telephone orders were taken by two secretary-clerks and salesman "consultants" supplied information to customers from a New York office and sent orders to Philadelphia for acceptance. Samples and catalogues were available and on hand in the office. Venue was sustained on the ground that acts of infringement "may have been committed in this District * * *" Id. at 358 of 227 F.Supp.

 Defendant, pursuant to 28 U.S.C. § 1404(a), has in the alternative moved to transfer this case to the Northern District of Illinois, Eastern Division, where this action might have been brought. A motion to transfer pursuant to § 1404(a) rests within the sound discretion of the court and this court's decision will not be disturbed except in cases of clear abuse. See Norwood v. Kirkpatrick, 349 U.S. 29, 75 S.Ct. 544, 99 L.Ed. 789 (1955); Barber-Greene Co. v. Blaw-Knox Co., 239 F.2d 774, 778 (7th Cir. 1957); Fannin v. Jones, 229 F.2d 368 (6th Cir.) cert. denied, 351 U.S. 938, 76 S.Ct. 834, 100 L.Ed. 1465 (1956). The defendant has the burden of establishing that the plaintiff's choice of forum should be disturbed and that the suit should be transferred. Houston Fearless Corp. v. Teter, 318 F.2d 822, 827 (10th Cir. 1963); Ford Motor Co. v. Ryan, 182 F.2d 329, (2d Cir.) cert. denied, 340 U.S. 851, 71 S.Ct. 79, 95 L.Ed. 624 (1950); Desousa v. Panama Canal Co., 202 F.Supp. 22, 26 (S.D.N.Y.1962).

48

Defendant argues that all its witnesses and business records relevant to this action are in Illinois. Plaintiff, on the other hand, although a Florida corporation, has asserted that its device was designed, developed, and originally produced in New York City, and that consequently employees of the two New York corporations which developed the device would be essential as witnesses by plaintiff. Weighing the balance of conveniences and burdens as this court must do, the court finds that defendant has not met its burden of overcoming the presumption in favor of the plaintiff's choice of his forum.

The motion to dismiss the complaint for improper venue is denied.

The motion to transfer is denied.

So ordered.