**EMI LIMITED, Plaintiff,**

v.

**PICKER INTERNATIONAL, INC., Defendant.**

**No. 83 Civ. 0759.**

United States District Court,
S.D. New York.

June 14, 1983.

Cooper, Dunham, Clark, Griffin & Moran, New York City, for plaintiff; Gerald W. Griffin, Ivan S. Kavrukov, New York City, of counsel.

Esanu, Katsky, Korins & Siger, New York City, Jones, Day, Reavis & Pogue, Cleveland, Ohio, for defendant; Jeffrey J. Baker, Cleveland, Ohio, of counsel.

## OPINION

EDWARD WEINFELD, District Judge.

This litigation involves a new kind of x-ray technology. It centers about patents for computerized or computer-aided tomographic scanning, a medical diagnostic device incorporating the technology generally known as "CT" or "CAT" scanners. Generally speaking, a CT scanner takes detailed cross-sectional pictures of a person's anatomy, bones and tissue by making thousands of individual x-ray measurements that are electronically unscrambled into a single view. It is the latest modern x-ray technology for diagnostic purposes to locate cancers, to analyze various organs and to observe items of the human body never previously seen without exploratory surgery. The installed units cost approximately one million dollars each.

The plaintiff, EMI Limited ("EMI"), is the owner of five patents for CT scanners and their improvements by assignment from the inventors. The defendant, Picker International, Inc. ("Picker") for many years has been a major manufacturer and distributor of x-ray machines. EMI commenced this action against Picker upon allegations that Picker's sale and distribution of its models of CT scanners ("Picker scanners") infringe upon claims in EMI's patents. Essentially, Picker challenges the validity of the patents; denies infringement and asserts a counterclaim for declaratory judgment that the patents are invalid and unenforceable.

Picker moves for an order pursuant to 28 U.S.C., section 1404(a), transferring this action to the Northern District of Ohio, within which district, at Highland Heights, Ohio, it has since the late 1960's maintained its corporate headquarters and manufacturing facilities. The plaintiff opposes the motion to transfer. Thus, the burden of proof is on Picker as the movant "to make a clear showing that the proposed transferee district is a more convenient one, and that the interests of justice would be better served by a trial there." [1]

Both parties have submitted extensive affidavits directed to the relevant criteria in passing upon a section 1404(a) motion as specified by this Court in *Schneider v. Sears*.[2] Upon analysis of their respective positions as to each of those items, the Court is persuaded that the disposition of this motion is narrowed to and in large measure turns upon the availability of process to compel attendance upon the trial of third-party unwilling witnesses whose testimony is material to prime issues and the interests of justice. As to the other criteria, neither litigant's claims markedly preponderate in its favor against the other.

Defendant's challenge to the validity of the patents, based upon the standards set forth in 35 U.S.C., sections 102, 103 and 112 and in *Graham v. John Deere*,[3] gives direction to the nature of the principal issues to be determined by the fact finder, which, among others, as stated in *Deere* include:

> the scope and content of the prior art . . .; differences between the prior art and the claims at issue . . .; and the level of ordinary skill in the pertinent art. . . . Against this background, the obviousness or nonobviousness of the subject matter is determined. Such secondary considerations as commercial success, long felt but unsolved needs, failure of others, etc., might be utilized to give light to the circumstances surrounding the origin of the subject matter sought to be patented. As indicia of obviousness or nonobviousness, these inquiries may have relevancy.[4]

The CT manufacturing industry is a decade old. EMI, a corporation organized under the laws of England, started production of the Ct scanners in the United States, in Chicago, Illinois, and made delivery of its

---

**1.** *Schneider v. Sears*, 265 F.Supp. 257, 263 (S.D.N.Y.1967). *See also Sweetheart Plastics, Inc. v. Illinois Tool Works, Inc.*, 267 F.Supp. 938 (S.D.N.Y.1967).

**2.** 265 F.Supp. 257 (S.D.N.Y.1967).

**3.** 383 U.S. 1, 86 S.Ct. 684, 15 L.Ed.2d 545 (1965).

**4.** *Id.* at 17–18, 86 S.Ct. at 693–694 (citations omitted).

first orders in 1973. Several years ago it discontinued making the machines and closed its Chicago plant. It licenses others to manufacture under the patents; in all, there are approximately ten licensees in the United States, including General Electric Company, Johnson & Johnson and Pfizer, Inc. The latter three, in contested litigation, challenged the validity of plaintiff's patents; however, those separate litigations which extended over a two-year period were settled before trial in return for licenses issued by EMI to the contestants.

The parties appear to be in agreement that the instant litigation will turn on the testimony of witnesses' knowledgeability of the scanner, its novelty, the prior art and other pertinent factors under *Deere.* Since such testimony is of critical importance, "[t]he demeanor of witnesses before the trier of the fact, with an opportunity to appraise credibility, may well make the difference between acceptance and rejection of crucial testimony." [5]

EMI claims that it is more important that the case be kept here than it is for Picker to have it transferred to Cleveland since it must rely to a much greater extent on material and unwilling third-party witnesses who are within the subpoena power of this Court but not of the Cleveland court; [6] that a transfer of the case means that the testimony of such witnesses can be presented only through deposition. This testimony, required for EMI's case, relates to the nature of the patented technology, its scientific, medical and commercial significance, the alleged use made of this technology in Picker scanners, the use of the technology in the patented machines previously manufactured by EMI, and in the machines now manufactured by EMI's licensees. Further, EMI asserts that in view of Picker's counterclaim for a declaratory judgment of invalidity, its rebuttal case perforce will require testimony from persons who were in the relevant technology at the time the patented inventions were made as to the asserted prior art and skill, the commercial success of the patented technology, the long felt but unsolved need for the technology, past failures to satisfy the need, unusual surprising results from the patented machine, the recognition by the industry at large of the patents in suit.

As to some of the foregoing required trial evidence EMI encounters no problem. The two inventors of the scanners, who live in England, as well as other key witnesses, are in its employ. Also it concedes the availability of experts affiliated with academic institutions. These witnesses are at the call of EMI whether the case is transferred to Cleveland or remains in this district. However, the rub is as to the witnesses whose testimony also is essential on the foregoing issues. EMI swears that to sustain its claim and to resist the counterclaim, it must rely upon other witnesses not under its control, principally officials and employees of licensees in the industry.

Thus we turn to a consideration of the specific potential third-party witnesses of each side about whom this issue centers. Because of its withdrawal from the manufacture of CT scanners in the United States, EMI has reduced its relevant personnel in this country from several hundred to a limited few. It does not have employees in the United States who were in the field of the relevant technology at the significant time period in the late 1960's to early 1970's who can testify with respect to the prior art at the time of the development of the patented inventions and EMI states that few, if any, such employees can be

---

5. *Oil & Gas Ventures—First 1958 Fund, Ltd. v. Kung,* 250 F.Supp. 744, 756 (S.D.N.Y.1966) (footnote omitted). *See also Gulf Oil Corp. v. Gilbert,* 330 U.S. 501, 511, 67 S.Ct. 839, 844, 91 L.Ed. 1055 (1947); *SEC v. Frank,* 388 F.2d 486, 491 (2d Cir.1968); *Commercial Solvents Corp. v. Liberty Mutual Ins.,* 371 F.Supp. 247, 250 (S.D.N.Y.1977); *Barrios v. Dade County,* 310 F.Supp. 744, 749 (S.D.N.Y.1970); *Fogel v. Wolfgang,* 48 F.R.D. 286, 291 (S.D.N.Y.1969);

*Axe-Houghton Fund A, Inc. v. Atlantic Research Corp.,* 227 F.Supp. 521, 524 (S.D.N.Y. 1964); *Polaroid Corp. v. Casselman,* 213 F.Supp. 379, 382–83 (S.D.N.Y.1962).

6. *See* Fed.R.Civ.P. 45(e); *Farmer v. Arabian American Oil Co.,* 379 U.S. 227, 231–32, 85 S.Ct. 411, 414–15, 13 L.Ed.2d 248 (1964).

found in England. Accordingly, for such additional and essential testimony it must rely upon the employees of its three former adversaries, General Electric, Johnson & Johnson and Pfizer Company which, as previously noted, challenged the validity of the patents. It must also rely upon employees of its other licensees who did not contest the patents. EMI has specified sixteen employees of such licensees and the nature of their testimony with respect to the basic contested issues. All these witnesses are within the subpoena power of this Court but beyond the reach of the Cleveland court. EMI represents that it has been informed by their employers that they will not appear at a trial without a subpoena. In that circumstance, if the case is transferred it will be deprived of the opportunity to present their live testimony—it can only be presented through depositions.

Countering the plaintiff's position, and in support of its motion to transfer, Picker states its research and development activity relating to its scanners involved a large number of specialists representing numerous disciplines, including systems engineering, data transfer, computer software development, x-ray engineering, mechanical design, advanced mathematics, image development and processing, computer hardware development and electrical engineering. Picker alleges that since 1974 approximately 200 of its employees have been engaged in such research and development and that of these, eighteen were so significantly involved as to be potential trial witnesses in support of its attack upon the validity of plaintiff's patents. Of this group, ten are still Picker employees, all of whom reside in the Cleveland, Ohio area. The other eight are no longer employed by it, but seven reside or are in business in the Cleveland area; one resides in Denver, Colorado. In addition, five other present or former employees of Picker, who were involved in the construction and manufacture of Picker scanners are asserted to have played such significant roles that their trial testimony is also deemed necessary and material to the

litigation. Two of this group are currently employed by Picker and reside in the Cleveland area, as do the other three, who no longer are in its employ. Further, Picker asserts there are five other employees who are knowledgeable regarding various aspects of the sale, marketing and distribution of Picker scanners, all of whom reside in the Cleveland area. However, it is not altogether clear why their testimony upon the trial proper is essential with respect to the patentability issue. Indeed, Picker forthrightly concedes that it is not likely all these witnesses will be trial witnesses.[7] In any event, out of a total of twenty-eight such prospective Picker witnesses, seventeen are presently in its employ reside in the Cleveland area. It is manifest, if their testimony is required upon the trial these seventeen will be available whether it is conducted in this forum or Cleveland, although to be sure at some inconvenience to Picker in view of the nature of their positions. As to the other eleven, the non-employees, it does not appear that they will not respond, if requested by Picker, and testify in New York upon a trial. If they are not amenable to such a request, they are beyond the subpoena power of this Court.

The highly technical nature of the inventions makes it desirable that the trial court have the benefit of observing the witnesses on both sides who may testify on the sharply contested issues. As postulated by the parties, one side or the other will be deprived of the live testimony of some witnesses, wherever the trial is conducted. The question is close, but upon balance it appears that EMI will suffer a greater disadvantage than Picker if the action is transferred to Cleveland. Its non-party witnesses, employed in the main by the licensees, will not appear in Cleveland and their appearance before that court cannot be compelled.

Picker's situation as to former employees or nonparty witnesses is somewhat different in two respects. As to former employees, it does not claim that it cannot per-

---

7. Picker Memorandum at 7.

suade some or all of them to testify upon a trial if the action remains in this district. But even if such former employees are not available here on a voluntary basis, it appears that apart from its present employees in the Cleveland area there are some 300 Picker employees in the Greater New York Metropolitan area, some of whom are knowledgeable with respect to vital and contested issues and who can readily be called upon if needed to support its claims.

Thus, under all the circumstances, not only the availability of witnesses, but the interests of justice, require that the defendant's motion be denied.

So ordered.