SAN SHOE TRADING CORP., Plaintiff,

v.

CONVERSE INC., Defendant.

No. 85 Civ. 6645 (RLC).

United States District Court,
S.D. New York.

Oct. 27, 1986.

Rogers Hoge & Hills, New York City, for plaintiff; George W. MacDonald, Jr., of counsel.

Lee Carl Bromberg, Robert L. Kann, Bromberg, Sunstein & McGregor, Boston, Mass., Howard S. Sussman, New York City, for defendants.

ROBERT L. CARTER, District Judge.

Defendant Converse, Inc. ("Converse") moves to dismiss this patent infringement action for improper venue or, in the alternative, to transfer this case to what it considers to be the more convenient forum of the District of Massachusetts.

## BACKGROUND

This case is about a patent governing a special type of pocket that can be affixed to the side of a shoe. The patent belongs to plaintiff San Shoe Trading Corporation ("San Shoe"). It is entitled, "Means for Displaying a Picture or the Like in a Shoe," U.S. Letters Patent 4,516,337.

On August 22, 1985, San Shoe brought this action alleging that Converse had infringed its patent. On October 7, 1985 Converse served an amended answer. In that pleading, Converse denied infringement, asserted that San Shoe's patent is invalid, and brought counterclaims alleging that San Shoe interfered with its contractual relations, committed libel, and violated a Massachusetts unfair competition statute, Mass.Gen.Laws. ch. 93A, as well as the Racketeer Influenced and Corrupt Organizations Act (RICO), 18 U.S.C. § 1961 *et seq.*

The facts relevant to the motions before the court are quite simple. San Shoe is incorporated in New York, where all but two of its American employees and all the documents relevant to this litigation are located. San Shoe's only tie that extends outside this district is to the man who invented the patented device. He lives in California. Flaherty Affidavit at ¶¶ 2–7.

Converse is incorporated in Massachusetts, where it has its principal place of business, and where all the employees and all the documents relevant to this litigation are located. Green Affidavit at ¶¶ 2, 13, 14. Also in Massachusetts is the former Converse employee who Converse claims invented the allegedly infringing device. He now works for a competitor. *Id.* at ¶¶ 15–18. From August, 1983, until at least July of 1985, Converse operated a showroom in the Southern District of New York from which it solicited sales of the allegedly infringing goods. *Id.* at ¶ 4. The showroom accounted for $100,000 in annual sales, out of over $200 million in sales Converse made nationwide. *Id.* at ¶ 8. All sales made in the showroom were only finalized after acceptance at Converse

headquarters in Massachusetts. *Id.* at ¶ 11.

## I. VENUE

■■■ Venue in patent infringement actions is governed exclusively by 28 U.S.C § 1400(b). *Fourco Glass Co. v. Transmirra Products Corp.*, 353 U.S. 222, 229, 77 S.Ct. 787, 792, 1 L.Ed.2d 786 (1957). That statute provides:

Any civil action for patent infringement may be brought in the judicial district where the defendant resides, or where the defendant has committed acts of infringement and has a regular and established place of business.

For the purposes of § 1400(b), the defendant's residence is the state in which it is incorporated. *Fourco Glass Co. v. Transmirra Products Corp., supra,* 353 U.S. at 226, 77 S.Ct. at 790. Since Converse is incorporated in Massachusetts, to establish venue in this district San Shoe must show that Converse both "has committed acts of infringement" and "has a regular place of business" here. *Ipco Hospital Supply Corp. v. Les Fils D'Auguste Maillefer, S.A.,* 446 F.Supp. 206, 208 (S.D.N.Y.1978) (Pollack, J.) (citing cases). San Shoe has the burden of proof on these issues. *Id.* at 207.

Converse resists venue in this district on three grounds. First, it argues that venue is barred because it closed its only New York facility, a showroom, before San Shoe filed suit. Next it asserts that the volume of sales it made from that showroom was too small, when compared to its sales nationwide, to create venue. Finally, Converse urges the court to revive the "completed acts doctrine," under which a company like Converse that only accepts sales in

its home office may only be sued in its home district.

### A. *When Venue is Determined under § 1400(b)*

■■■ The first ground on which Converse contests venue is its contention that because it had moved out of the only office it occupied in this district more than a month before San Shoe filed its complaint, venue cannot lie here. Memorandum of Law at 3–4. San Shoe's response is that Converse's version of when it moved out of New York is inaccurate as a factual matter, and that the defendant's argument as to when venue is determined is wrong as a matter of law.[1] Memorandum in Opposition at 4–8. San Shoe's factual objections are not convincing, and in light of the burden it carries on these issues, the court will accept Converse's version of the facts.[2] Plaintiff's legal argument, however, requires more careful study.

Plaintiff argues that under the patent statute venue should be determined not when the complaint is filed, but when the claim of infringement accrued. This is an issue that apparently has not been addressed by any court in this circuit. Only two courts in any circuit have ruled on when venue is determined under § 1400(b). Both courts held that the pivotal time was that of accrual. *Welch Scientific Co. v. Human Engineering Institute, Inc.,* 416 F.2d 32, 35 (7th Cir.1969), *cert. denied,* 396 U.S. 1003, 90 S.Ct. 552, 24 L.Ed.2d 494 (1970); *Datascope Corp. v. SMEC, Inc.,* 561 F.Supp. 787, 790 (D.N.J.1983), *aff'd in relevant part,* 776 F.2d 320 (Fed.Cir.1985).

---

1. San Shoe also argues that Converse has waived its objection to venue by raising its motion after discovery has begun. Memorandum in Opposition at 12. A defendant's motion for a change of venue is only waived where the plaintiff can demonstrate that it would be prejudiced by a change of forum. *Essex Crane Rental Corp. v. Vic Kirsch Construction Co.,* 486 F.Supp. 529, 535–36 (S.D.N.Y.1980) (Haight, J.). The only potential prejudice San Shoe points to is that the parties here fashioned their interrogatories and discovery requests to conform with the local rules in the Southern District. Memorandum in

Opposition at 13–14. This is not sufficiently prejudicial to San Shoe to prevent Converse from asserting its motion for a change of venue. *See Shaw v. United States,* 422 F.Supp. 339, 341 (S.D.N.Y.1976) (Duffy, J) (no waiver of objection to venue when defendant pursues discovery).

2. In any case, the court's decision as to when venue is determined as a matter of law renders the factual dispute moot.

In *Welch*, the defendant was an Ohio corporation with a "regular and established place of business" in Illinois when the alleged infringement occured. Thirty-seven days before plaintiff filed suit, however, defendant closed its Illinois operations, and on this ground resisted venue in the Northern District of Illinois. The Seventh Circuit held that "[v]enue is properly lodged in the district if the defendant had a regular and established place of business at the time the cause of action accrued and suit is filed within a reasonable time thereafter." *Welch Scientific Co. v. Human Engineering Institute, Inc., supra,* 416 F.2d at 35. The court explained that "a defendant cannot establish a business in a particular judicial district and then abandon or sell it without remaining amenable to suit for venue purposes in that district for a reasonable time." *Id.* at 36.

The court in *Datascope* found this logic convincing. Both courts rejected defendants' arguments that to hold venue proper would violate the United States Supreme Court's admonition in *Fourco Glass* that § 1400(b) was to be given a restrictive reading. *Welch Scientific Corp. v. Human Engineering Institute, Inc., supra,* 416 F.2d at 35; *Datascope Corp. v. SMEC, Inc., supra,* 561 F.Supp. at 789.

Converse acknowledges, of course, the weight of authority against it, but points to decisions under the general venue statute, 28 U.S.C § 1391, that have held that venue is determined at the time of filing. Reply

Memorandum at ¶ 4. Converse is correct that there is a split in authority over when venue is determined under § 1391. A majority of courts, however, have looked to accrual,[3] although the only reported case in this district, a decision now over thirty years old, took the minority position. *Satterfield v. Lehigh Valley Railroad Co.,* 128 F.Supp. 669, 670 (S.D.N.Y.1955) (Palmieri, J.).[4]

The majority position is based on the very reasoning articulated in *Welch:* once a defendant has availed himself of the benefits of doing business in a district, he should not be able to retreat to his home forum simply by closing up shop before plaintiff has an opportunity to file a complaint.[5] If anything, that reasoning is more compelling under the patent venue statute than under § 1391. Unlike the patent venue statute, § 1391 provides for venue where a claim arises. 15 C. Wright, A. Miller & E. Cooper, *Federal Practice and Procedure* § 3811 at 116 (1976). With this alternate source of venue there is much less danger that a defendant will be able to escape venue in a foreign district by pulling up its stakes before plaintiff has a chance to file suit. That is why courts and commentators that support a filing standard under § 1391 might well support an accrual standard under § 1400(b). For example, in its papers Converse cites *Federal Practice and Procedure* as supporting a filing standard. Reply Memorandum of Law at 4. But, while Professors Wright,

3. *See, e.g., Board of County Comm'rs v. Wilshire Oil Co.* 523 F.2d 125, 131–32 (10th Cir.1975); *Eastland Construction Co. v. Keasbey & Mattison Co.,* 358 F.2d 777, 780 (9th Cir.1966); *Snyder v. Eastern Auto Distributors, Inc.,* 357 F.2d 552, 556 (4th Cir.), *cert. denied,* 384 U.S. 987, 86 S.Ct. 1889, 16 L.Ed.2d 1004 (1966); *Farmers Elevator Mutual Insurance Co. v. Carl J. Austad & Sons, Inc.,* 343 F.2d 7, 12 (8th Cir.1965); *Marquest Medical Products, Inc. v. EMDE Corp.,* 496 F.Supp. 1242, 1245 (D.Colo.1980); *Ward v. Island Creek Fuel and Transport Corp.,* 261 F.Supp. 810, 811 (N.D.W.Va.1966); *Sharp v. Commercial Solvents Corp.,* 232 F.Supp. 323 (N.D.Tex.1964); *L'Heureux v. Central American Airways Flying Service, Inc.,* 209 F.Supp. 713 (D.Md.1962). *See also Levine v. Arabian American Oil Co.,* 84 Civ. 2396, slip op. at 7 n. 5 (S.D.N.Y. Nov. 16,

1984) (Carter, J.) [Available on WESTLAW, DCTU database] (citing cases).

4. *See also Agra Chemical Distributing Co. v. Marian Laboratories, Inc.,* 523 F.Supp. 699, 702 (W.D.N.Y.1981); *Sunbury Wire Rope Manufacturing Co. v. United States Steel Corp.,* 230 F.2d 511 (3d Cir.1956) (dictum); *United Industrial Corp. v. Nuclear Corp. of America,* 237 F.Supp. 971 (D.Del.1964); *King v. Johnson Wax Assoc., Inc.,* 565 F.Supp. 711, 717 (D.Md.1983) (where "contacts relied upon to establish venue bear no relation to the plaintiffs' suit," time of filing governs). *See generally* 15 C. Wright, A. Miller and E. Cooper, *Federal Practice and Procedure* § 3811 at 114–16.

5. See cases cited *supra* note 3.

Miller, and Cooper do support a filing standard under § 1391, they do so precisely because that statute provides for venue where a claim arises. 15 C. Wright, A. Miller & E. Cooper, *Federal Practice and Procedure, supra,* § 3811 at 116. In the absence of any such alternate source of venue (i.e., as under § 1400(b)), they find "much practical wisdom" in an accrual standard. *Id.* at 115.

■ Another reason, if one is needed, that decisions adopting the filing standard under § 1391 are distinguishable is that venue under the patent statute is not linked to personal jurisdiction. *Ipco Hospital Supply Corp. v. Les Fils D'Auguste Maillefer S.A., supra,* 446 F.Supp. at 208. Thus, holdings like that in *Agra Chemical Distributing Co. v. Marion Laboratories, Inc.,* 523 F.Supp 699 (W.D.N.Y. 1981), where the adoption of the filing standard is explicitly tied to the courts' decision on the jurisdictional issue, are inapposite.

The most compelling argument Converse offers in support of the filing standard is based on the text of § 1400(b) itself. Converse notes correctly that the statute provides for venue where the defendant *"has a regular and established place of business."* 28 U.S.C. § 1400(b) (emphasis added). Converse urges that the use of the present tense "has," especially when juxtaposed with the statute's provision regarding venue "where the defendant *has committed* acts of infringement," 28 U.S.C. § 1400(b) (emphasis added), is indicative of Congress's intent to endorse the filing standard. Memorandum of Law at 4.

■ While this argument has some obvious appeal, the court believes that Converse has read too much into the text of the law. Absent further support in the legislative history, the court is unconvinced that Congress chose its words with the question we are faced with in mind. Instead, the court finds that Congress's objectives would better be served by holding that venue is determined at the time the claim accrues. *See Welch Scientific Co. v. Human Engineering Institute, Inc., supra,* 416 F.2d at 35 (discussing congressional intent in enacting § 1400(b)); *Datascope*

*v. SMEC, Inc., supra,* 561 F.Supp. at 789–90 (same). *See also Farmers Elevator Mutual Insurance Co. v. Carl J. Alostad & Sons, Inc.,* 343 F.2d 7, 11–12 (8th Cir.1965) (congressional intent in enacting § 1391).

### B. Volume of Sales

■ Converse's second objection to venue is that the $100,000 in annual sales it made from its New York showroom is not sufficient to create venue for a company that did over $200 million in sales nationwide. Reply Memorandum at 3. This argument is out of step with the case law. Courts have not looked to the size of a defendant's business, or to how the size of a defendant's business within a district compares with its sales nationwide. Instead, they have looked to whether or not the defendant:

> actually maintains, in the words of the statute, a 'regular and established place of business' within the district. This 'place of business' can be a branch office ... a sales showroom ... or a warehouse or distribution center.... 'Emphasis must be on the existence of the regular and established place of business—not on the nature or character of the business conducted there.'

*Coleco Industries, Inc. v. Kransco Manufacturing, Inc.,* 247 F.Supp. 571, 575 (S.D. N.Y.1965) (Tenney, J.) (*quoting Brevel Products Corp. v. H & B American Corp.,* 202 F.Supp. 824, 827 (S.D.N.Y.1962) (Dawson, J.)). *See also Ipco Hospital Supply Corp. v. Les Fils D'Auguste Maillefer, supra,* 446 F.Supp. at 208 (whether or not defendant has a regular and established place of business turns on whether it has a "physical location" within district). Since Converse admits that it maintained a showroom in the Southern District of New York, there can be no question but that it maintained a "regular and established place of business" here within the meaning of § 1400(b).

The only support the court has found for defendant's argument is dictum from the court's opinion in *Mastantuono v. Jacobsen Manufacturing Co.,* 184 F.Supp. 178 (S.D.N.Y.1960) (MacMahon, J.), a case decided over twenty-five years ago. In *Mas-*

*tantuono*, the court stated that venue is established where a "defendant is regularly engaged in carrying on *a substantial part of its ordinary business* on a permanent basis in a physical location ... over which it exercises some measure of control." *Id.* at 180 (emphasis added). The court's holding, however, like those cited in the text above, turned on the fact that "defendant neither owns, leases or controls any place of business within the district." *Id.* Neither this court, nor any other court, has extended the *Mastantuono* court's language to achieve the result that Converse would like us to reach. We refuse to break with precedent.[6]

### C. Completed Acts Doctrine

■ Converse's final objection to venue in this district is its attempt to revive the "completed acts doctrine." That doctrine held that when an alleged patent infringer solicited sales in a district and only accepted those sales at its home office, as Converse did, then venue would lie only in the home district.

Over twenty years ago this court noted that the completed acts doctrine was "of doubtful reason" and "moribund." *Watsco, Inc. v. Henry Valve Co.*, 232 F.Supp. 38, 41 (S.D.N.Y.1964) (Edelstein, J.). As the *Watsco* court explained:

a patentee acquires the "right to exclude others from making, using, or selling" its invention ... and the solicitation activities of the defendant herein and the presence and delivery of its products here are, therefore, no less a derogation and interference with the patentee['] s exclusive right in this district, merely because the order is accepted in another state. It

does not comport with reason to require a plaintiff patentee to chase the alleged infringer to the defendant's home district simply because sales orders are approved there, while all the while sales representatives of the defendant are continually present in the district and the alleged infringing device is delivered and displayed within the district.

*Id.* at 46 (citations omitted). That reasoning is as compelling today as it was in 1964. The court will not depart from its holding.

### II. Transfer

■ Converse also moves to transfer this case to its home District of Massachusetts pursuant to 28 U.S.C. § 1404(a).[7] The factors courts generally weigh in determining whether a transfer is warranted include:

[t]he convenience to parties; the convenience of witnesses; the relative ease of access to sources of proof; the availability of process to compel attendance of unwilling witnesses; practical problems that make trial of a case easy, expeditious, and inexpensive; and the interests of justice.

*Y[4] Design, Ltd. v. Regensteiner Publishing Enterprises, Inc.*, 428 F.Supp. 1067, 1068–69 (S.D.N.Y.1977) (Bonsal, J.) (citations omitted). A motion to transfer is only granted where the "balance of conveniences weighs clearly in favor of the defendant." *Id.* at 1069.

Converse argues first that all its employees and all the documents relevant to the development of the allegedly infringing device are located in Massachusetts, and transporting them to New York would be extremely inconvenient. Memorandum of Law at 9. While this is no doubt true, the

---

**6.** Even if the volume of defendant's sales in a district may be relevant to whether or not it has a "regular and established place of business," the court would be reluctant to place any emphasis on what percentage of defendant's total sales those in-district sales represented. To look at those percentages, as Converse would like us to do, would allow a large corporation with significant sales in a district to escape venue simply because it sold so much elsewhere. That result would be entirely out of step with Congress's effort to ensure that a defendant is subject to suit in a district where it infringes a patent and maintains a business. *See* 28 U.S.C.

§ 1400(b). Had Congress wished the court to look to percentages, it would have directed us to do so explicitly. *See Fourco Glass Co. v. Transmirra Products Corp., supra*, 353 U.S. 222, 77 S.Ct. 787 (§ 1400(b) is to be read restrictively).

**7.** That statute provides that:

For the convenience of parties and witnesses, and in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought.

same inconvenience would befall San Shoe were the action transferred to Massachusetts. *See* Flaherty Affidavit at ¶¶ 4–7. San Shoe's witnesses and documents, with the exception of one principal witness who resides in California, are in New York. *Id.* If anything, moving the trial to Massachusetts would be more disruptive to San Shoe than holding it here would be to Converse because San Shoe is a significantly smaller company than Converse.

The only circumstance that Converse can point to in support of a Massachusetts forum that is not offset by a corresponding inconvenience to San Shoe is that the Converse employee who Converse claims developed the allegedly infringing device now works for a Converse competitor in Massachusetts. Converse argues that the employee is beyond the subpoena power of this court, but not of a court in the District of Massachusetts, and that the former employee will not appear to testify unless subpoenaed. Memorandum of Law at 9–10.

 Converse is surely correct that live witnesses are preferred to the deposition testimony that can be used in their absence. *See EMI Ltd. v. Picker International, Inc.,* 565 F.Supp. 905, 907–08 (S.D.N.Y.1983) (Weinfeld, J.). But Converse goes too far when it says that the use of deposition testimony is "unacceptable." Reply Memorandum of Law at 5. The availability of live witnesses is but one factor the court must weigh in deciding a motion to transfer under § 1404(a). *Y⁴ Design, Ltd. v. Regensteiner Publishing Enterprises, Inc., supra,* 428 F.Supp. at 1068–69. Here the court does not find the potential unavailability of defendant's witness sufficiently debilitating to defendant's case to overcome the burden it shoulders.

In making this decision, the court is mindful not only of the issues raised by the main action, but of those raised by defendant's counterclaims. In its counterclaims, Converse brings actions for libel, unfair competition,[8] and interference with contract, as well as a RICO claim. These claims are not well developed, but presumably they allege wrongs committed in the Southern District of New York, where San Shoe is located and almost all its employees work. As a result, evidence relating to those claims will likely be located here, and this court will be a far more convenient forum than a court in Massachusetts in which to assess their merit.[9]

In sum, defendant's motion for a change of venue or for a transfer to the District of Massachusetts is denied.

IT IS SO ORDERED.

---

8. Converse argues that this claim, which is made under Massachusetts law, would be more "expeditiously" adjudicated by a district court in Massachusetts. Memorandum of Law at 10. "Certainly, this Court is capable of fairly applying the law of its sister state in the event that such law governs." *O'Neill v. Stanwood Corp.,* 577 F.Supp. 1001, 1003 (S.D.N.Y.1984) (Keenan, J.). This is not a situation where the court will be faced with the mysterious tomes of a truly foreign jurisdiction. *Compare Farmanfarmaian v. Gulf Oil Corp.,* 437 F.Supp. 910, 925 (S.D.N.Y.

1977) (Carter, J.), *aff'd,* 588 F.2d 880 (2d Cir. 1978) (Iranian law).

9. This is especially true of the RICO claim, which alleges that San Shoe has committed more than one "indictable" offense. *Cf. Leroy v. Great Western United Corp.,* 443 U.S. 173, 185–86, 99 S.Ct. 2710, 2717–18, 61 L.Ed.2d 464 (1979) (possible future action by local law enforcement officials relevant to choice of venue).