**CROSS & CROSS PROPERTIES, LTD., Plaintiff,**

v.

**EVERETT ALLIED COMPANY, Defendant.**

No. 86 Civ. 2890 (RLC).

United States District Court, S.D. New York.

March 12, 1987.

Carro, Spanbock, Kaster & Cuiffo, New York City, for plaintiff; Vincent Lipari of counsel.

Warren J. Kaps & Associates, New York City, for defendant; Warren J. Kaps, Samuel N. Faivus, of counsel.

ROBERT L. CARTER, District Judge.

Plaintiff Cross & Cross Properties, Ltd. ("Cross & Cross"), a limited partnership organized under the laws of the State of New York, performs investment and real estate consulting services out of New York City. Defendant Everett Allied Company ("Everett") is a general partnership organized under the laws of New Jersey with its principal place of business in Florida.

Cross & Cross originally brought this action in the Supreme Court of the State of New York, New York County. It sought $49,047 in fees, for which Everett is allegedly liable under a "Consultancy Agreement" between the parties. The action was removed to this court based on diversity of citizenship, and defendant counterclaimed for $149,730, which it claimed it was owed under the same Consultancy Agreement.

Defendant now moves to dismiss the action for lack of personal jurisdiction, or in the alternative for change of venue and disqualification of plaintiff's counsel, Carro, Spanbock, Kaster & Cuiffo ("Carro, Spanbock"). Plaintiff cross-moves for summary judgment dismissing the counterclaim. In turn, defendant cross-moves to amend the counterclaim and strike its claim for a money judgment.

## BACKGROUND

On July 1, 1978, the parties formalized a set of agreements apparently designed primarily to create a tax shelter. Everett sold its interest in a four-story parking garage in the State of Washington to Goodwalk Associates ("Goodwalk"), the assignee of a

corporation affiliated with Cross & Cross. In return, Goodwalk delivered a note and purchase-money mortgage to Everett. Everett simultaneously leased back the property from Goodwalk. In addition, under the terms of the Consultancy Agreement, Cross & Cross would render consulting services, and Everett would pay yearly fees provided that it received proper payment on the note and mortgage. The Consultancy Agreement specified that Cross & Cross would perform the consulting services within 50 miles of its New York City offices unless it agreed otherwise.

Negotiations leading up to these arrangements took place by mail, by telephone, and in person. According to Cross & Cross, its president—Ira Smith—and Everett's president—Alvin Dern—met in person in New York City at least three times prior to the signing of the agreements. At one "lengthy meeting" they "discussed and agreed upon the terms of the sale and leaseback," and at another meeting they "discussed and agreed upon the Consultancy Agreement." Affidavit of Ira N. Smith, June 12, 1986, ¶¶ 4, 6. In short, although the relevant contractual instruments were executed separately by the parties in their respective states of residence, the real hashing out of the agreements occurred at the face-to-face meetings in Manhattan.

The role that Carro, Spanbock played in these negotiations is not entirely clear. Donald J. Cassidy, then an associate at the firm, assisted all participants in at least some of the transactions. As Cassidy remembers, Ira Smith and his brother Barry were the clients of Carro, Spanbock, and the firm did not represent Everett in any capacity. Affidavit of Donald J. Cassidy, June 27, 1986, ¶ 2. However, Carro, Spanbock did bill Everett for half of the hours worked by Cassidy, memorialized as "Preparation of documentation in connection with the sale/leaseback of garage premises in Everett, Washington." Affidavit of Ira N. Smith, June 12, 1986, Exh. G at 2.

After execution of the various agreements, Everett paid some of the consultancy fees and Goodwalk made some payments on the note and mortgage, though not necessarily in a timely manner. On April 19, 1982, however, Everett stated in a letter to Cross & Cross that it considered the Consultancy Agreement terminated, and demanded the return of all fees already paid, because the note and mortgage had not been "complied with in all respects in a timely and business like [sic] fashion." *Id.*, Exh. J at 3. Whatever the respective rights and responsibilities of the parties as of April, 1982, the parties reached a partial settlement on January 11, 1985, before a court of the State of Washington. The parties stipulated in open court to the dismissal of all claims of both Cross & Cross and Everett for obligations arising prior to December 31, 1984. *Id.*, Exh. I at 3. Any claims or defenses of either party arising after that date were to be preserved. *Id.*[1]

The $49,047 sought by plaintiff represents the total fees coming due subsequent

---

1. The Washington court's transcription of the stipulation reads:

The parties stipulate that an Order be entered that the defendant, Barry M. Smith, shall pay to Everett Allied Company the sum of $6,000, payment to be made within 30 days of entry of this stipulation; and upon payment, plaintiff shall acknowledge full payment and release all claims of any kind whatsoever against defendants under the Note for $20,000 dated July 1, 1978, given by Goodwalk Associates to Everett Allied Company.

Number two, the parties further stipulate to the entry of an Order dismissing with prejudice the claims of Cross & Cross, Limited against Everett Allied Company for all monies due before December 31, 1984 on the consultancy agreement between Cross & Cross Properties Limited and Everett Allied Company

action; and for a further Order dismissing with prejudice the claims of Everett Allied Company against Cross & Cross, Limited for all monies paid by Everett Allied Company to Cross & Cross Properties, Limited before December 31, 1984, under the consultancy agreement.

These mutual dismissals are to claims between the parties under the consultancy agreement for monies owing or paid prior to December 31, 1984. The parties specifically do not release or waive any claims for monies owing under the consultancy agreement after December 31, 1984, or any defenses to such claims.

Transcript of Proceedings, at 41–42, *Dern & Co. v. Goodwalk Associates*, No. 83–2–02684–7 (Super.Ct. Jan. 11, 1985), *reproduced in* Affidavit of Ira N. Smith, June 12, 1986, Exh. I at 2–3.

to December 31, 1984, under the Consultancy Agreement. Neither party suggests that any monies have actually been paid since the date of the partial settlement. Everett effectively concedes that it has paid none because, by way of its cross-motion to amend the counterclaim, it "has abandoned any attempt to obtain a money Judgment" for fees it previously claimed to have paid. Defendant's Letter Brief at 2. As amended, Everett's counterclaim would seek only a declaratory judgment terminating any of its obligations under the Consultancy Agreement. *Id.*

## DISCUSSION

### A. *Personal Jurisdiction*

In this diversity action, the law of the forum in which the court sits governs the issue of personal jurisdiction. *Arrowsmith v. United Press International,* 320 F.2d 219, 223 (2d Cir.1963) (en banc). Plaintiff asserts personal jurisdiction over Everett pursuant to New York's "Long-Arm Statute," CPLR § 302. The statute provides in pertinent part:

(a) *Acts which are the basis of jurisdiction.* As to a cause of action arising from any acts enumerated in this section, a court may exercise personal jurisdiction over any nondomiciliary ... who in person or through an agent:

1. transacts any business within the state.... *Id.* § 302(a)(1).

At this stage, plaintiff need only make a *prima facie* showing of personal jurisdiction through its pleadings and affidavits, although it bears the ultimate burden at trial of proving jurisdiction over the defendant by a preponderance of the evidence. *Cutco Industries, Inc. v. Naughton,* 806 F.2d 361, 364–65 (2d Cir.1986). Moreover, because plaintiff is the party opposing a motion to dismiss the action, all of the pleadings and affidavits "are construed in the light most favorable to plaintiff and all doubts are resolved in its favor." *Id.* at 365; *Hoffritz for Cutlery, Inc. v. Amajac, Ltd.,* 763 F.2d 55, 57 (2d Cir.1985).

Here, personal jurisdiction is hardly doubtful. Everett, through its president Dern, was physically present in New York for negotiation of and agreement in principle to the contracts out of which the cause of action arose. These factual allegations present very nearly the "clearest sort of case" for long-arm jurisdiction under New York law. *See George Reiner & Co. v. Schwartz,* 41 N.Y.2d 648, 652–53, 394 N.Y.S.2d 844, 847, 363 N.E.2d 551, 553 (1977) (where cause of action arises out of a contract, court has jurisdiction over defendant who was physically present in New York at the time the contract was negotiated and made).

Of course, physical presence by itself is not a talisman for the transaction of business on which long-arm jurisdiction is based. *McGowan v. Smith,* 52 N.Y.2d 268, 272, 437 N.Y.S.2d 643, 645, 419 N.E.2d 321, 322 (1981). The court must look to the "quality and nature" of defendant's activity in New York, rather than any specific instance of transitory presence, to determine whether defendant purposefully availed itself of the privilege of transacting business here. *George Reiner & Co., supra,* 41 N.Y.2d at 650–51, 394 N.Y.S.2d at 845–46, 363 N.E.2d at 551–53 (quoting *International Shoe Co. v. Washington,* 326 U.S. 310, 319, 66 S.Ct. 154, 160, 90 L.Ed. 95 (1945); *Hanson v. Denckla,* 357 U.S. 235, 253, 78 S.Ct. 1228, 1239, 2 L.Ed.2d 1283 (1958)).

Dern was present in New York, according to plaintiff's pleadings and affidavits, not once but three times; and these meetings were apparently the parties' opportunities to dicker over terms, consult with lawyers, and hammer out any differences. "[L]ooking at the transaction as a whole," this sort of bargaining, relevant to the formation of the contract, constitutes the purposeful transaction of business needed for jurisdiction over the defendant. *George Reiner & Co., supra,* 41 N.Y.2d at 653, 394 N.Y.S.2d at 847, 363 N.E.2d at 554 (quoting *Hi Fashion Wigs, Inc. v. Peter Hammond Advertising, Inc.,* 32 N.Y.2d 583, 587, 347 N.Y.S.2d 47, 50, 300 N.E.2d 421, 423 (1973)); *Capitol Cabinet Corp. v. Interior Dynamics, Ltd.,* 541 F.Supp. 588, 590 (S.D.

N.Y.1982) (Edelstein, J.). Everett's motion to dismiss for lack of personal jurisdiction is therefore denied.

## B. *Venue*

Everett next contends that this case should be transferred to federal district court in either New Jersey or Florida pursuant to 28 U.S.C. § 1404(a).[2] A motion for such a transfer is addressed to the district court's discretion. *Wyndham Associates v. Bintliff,* 398 F.2d 614, 621 (2d Cir.), *cert. denied,* 393 U.S. 977, 89 S.Ct. 444, 21 L.Ed.2d 438 (1968); *Actmedia, Inc. v. Ferrante,* 623 F.Supp. 42, 44 (S.D.N.Y. 1985) (Carter, J.). At the outset, however, the plaintiff's choice of forum deserves deference and will not be disturbed unless the moving party bears its burden of showing that "the balance of convenience and justice weighs heavily in favor of the transfer." *Id.; Richardson Greenshields Securities, Inc. v. Metz,* 566 F.Supp. 131, 134 (S.D.N.Y.1983) (Sweet, J.).

Factors properly taken into account on a motion for transfer include the location of the parties and witnesses, the accessibility of sources of proof, the availability of compulsory process over unwilling witnesses, any practical considerations indicating that trial in another district would be more expeditious or inexpensive, and, more broadly, the interests of justice. *Id.* at 134; *see San Shoe Trading Corp. v. Converse Inc.,* 649 F.Supp. 341, 346 (S.D.N.Y.1986) (Carter, J.); *cf. Gulf Oil Corp. v. Gilbert,* 330 U.S. 501, 508, 67 S.Ct. 839, 843, 91 L.Ed. 1055 (1947).

■ Everett identifies some of these factors but fails to show how even one of them weighs in favor of another venue. For example, Everett properly asserts that this matter should be adjudicated in a forum that facilitates an orderly, fair trial of the issues. *See generally Mims v. Proctor & Gamble Distributing Co.,* 257 F.Supp. 648 (D.S.C.1966). However, it submits no reason why trial here would not be fair and

orderly. Defendant states that its general partners, witnesses, and partnership records are located in New Jersey and Florida. However, the witnesses and partnership records of Cross & Cross are in New York. Everett never attempts to show that it would suffer *more* inconvenience by travelling here than Cross & Cross would suffer by travelling elsewhere. *See Bastille Properties, Inc. v. Hometels of America, Inc.,* 476 F.Supp. 175, 182 (S.D.N.Y. 1979) (Carter, J.) (when balance of convenience is in equipoise, plaintiff's forum choice should control). Indeed, Everett has not stated how many witnesses it plans to call, who they are, what their testimony might be, what records it intends to introduce, or what significance it expects such records to have. Without such information, the court cannot begin to weigh the actual inconvenience confronting Everett. *See Somerville v. Major Exploration, Inc.,* 576 F.Supp. 902, 907 (S.D.N.Y.1983) (Carter, J.).

■ Moreover, by proposing New Jersey as a suitable alternative venue, Everett makes it difficult to begin seriously considering its complaints of inconvenience. District courts here and in New Jersey have taken note of the *de minimus* inconvenience incurred in the few miles of travel between here and New Jersey. *Moyglare Stud Farm, Ltd. v. Due Process Stable, Inc.,* 562 F.Supp. 289, 292 (S.D.N.Y.1983) (Conner, J.); *see Semmes Motors, Inc. v. Ford Motor Co.,* 429 F.2d 1197, 1203 (2d Cir.1970) (discussing New Jersey district court's denial of transfer). The difference in convenience of access to sources of proof as between New York and New Jersey is correlatively minimal. Nor have the parties suggested that unwilling witnesses subject to compulsory process in New Jersey would not be equally subject to subpoena in New York. *See* Rule 45(e), F.R.Civ.P. (For that matter, Everett does not claim to have unwilling witnesses residing in Florida or anywhere else.)

---

**2.** That section provides:

For the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought.

28 U.S.C. § 1404(a).

718

As noted in the discussion of personal jurisdiction, this action arises out of an agreement that, according to plaintiff, was negotiated and agreed upon in principle in New York City. The Consultancy Agreement specifies that plaintiff would render its services within 50 miles of its offices. Plaintiff and its witnesses are residents of New York. The transaction as a whole was not a local one, but it nonetheless bears significant ties to New York. The court may safely infer that plaintiff chose this forum in exercise of its right to pursue a remedy here, consistent with the interests of justice.

■ The court finds no basis for disturbing plaintiff's choice of venue. The motion to transfer is accordingly denied.

## C. *Motion to Disqualify Counsel*

Everett has also moved to disqualify Carro, Spanbock from representing Cross & Cross. Everett argues that the concept of attorney-client confidentiality would become a farce if Carro, Spanbock is permitted to continue, because the law firm counseled Everett and helped draft the Consultancy Agreement out of which this action arises.

Cross & Cross disagrees with Everett's premise as well as its conclusion. It asserts that the services it rendered and billed to Everett concerned the sale and leaseback of the garage property and do not bear any relation to the instant action. It also submits that Carro, Spanbock never represented Everett alone, so any information divulged by Everett is unprotected by the attorney-client privilege and is ineffective to disqualify the firm.

Counsel may be disqualified where successive representation would conflict with the mandate of Canon 4: "A lawyer should preserve the confidences and secrets of a client." ABA Code of Professional Responsibility, Canon 4. In particular, disqualification is warranted where:

(1) the moving party is a former client of the adverse party's counsel;

(2) there is a substantial relationship between the subject matter of the counsel's prior representation of the moving party and the issues in the present lawsuit; and

(3) the attorney whose disqualification is sought had access to, or was likely to have had access to, relevant privileged information in the course of his prior representation of the client.

*Evans v. Artek Systems Corp.*, 715 F.2d 788, 791 (2d Cir.1983); *Papst Motoren GMbH & Co. KG v. Kanematsu-Goshu (U.S.A.) Inc.*, 629 F.Supp. 864, 874 (S.D.N.Y.1986) (Carter, J.). A party moving for disqualification of counsel faces a high standard of proof, however, because disqualification frustrates the client's strong interest in freely choosing his legal representative and, whether sought for tactical reasons or in good faith, it burdens the client with expense and delay. *Evans, supra*, 715 F.2d at 791–92; *Government of India v. Cook Industries, Inc.*, 569 F.2d 737, 739 (2d Cir.1978).

■ In this case, the first two conditions for disqualification need not be addressed because Everett has failed to show that the third condition is met: Everett bears the burden of proving that Carro, Spanbock "was in a position where [it] *could* have received information which [Everett] might reasonably have assumed the [law firm] would withhold from [Cross & Cross]." *Allegaert v. Perot*, 565 F.2d 246, 250 (2d Cir.1977) (emphasis in original). Until Everett meets that burden, the questions whether it was a client of Carro, Spanbock, and whether the prior matter is substantially related to this action, are not even implicated. *See id.*

Everett concedes, however, that, insofar as Carro, Spanbock represented it at all, the representation was joint: "Carro, Spanbock ... represented all of the parties in all of the negotiations and all of the documentation thereto." Affidavit of Alvin Dern, June 23, 1986, ¶ I. The bargaining was, from Dern's perspective, "not an adversary proceeding." *Id.* Under these circumstances, no one could reasonably have assumed that Carro, Spanbock would withhold any information from Cross & Cross, its primary client then and now. While it is difficult to imagine Carro, Spanbock whis-

pering its way through the nonadversary negotiations, it is still more difficult to imagine it doing so behind the back of Cross & Cross.

 In short, based on the pleadings and affidavits before the court, Carro, Spanbock could not have been positioned to receive information intended to be withheld from Cross & Cross because its loyalty was and is to Cross & Cross. *See Allegaert, supra,* 565 F.2d at 250–51. The motion to disqualify Carro, Spanbock is therefore denied.

### D. *Motions for Summary Judgment and to Amend the Counterclaim*

 Although the remaining motions go to the merits, they may be resolved in summary fashion. Plaintiff cross-moves for summary judgment dismissing the counterclaim for $149,730 in consultancy fees which Everett originally claimed to have paid. As already alluded to, Everett abandoned any claim to damages after Cross & Cross proffered copies of (1) Everett's letter repudiating its obligations under the Consultancy Agreement and (2) the partial settlement in Washington state court. Because the parties agree as to this issue, plaintiff's cross-motion for summary judgment is granted and defendant's counterclaim for damages is dismissed. *See Knight v. U.S. Fire Insurance Co.,* 804 F.2d 9, 11 (2d Cir.1986); Rule 56(c), F.R. Civ.P.

 The only remaining point of contention is whether Everett should be permitted to resurrect the counterclaim to pursue a declaration that its obligations under the Consultancy Agreement are terminated. Leave to amend a claim is to be "freely given" absent a valid reason for denial. *Foman v. Davis,* 371 U.S. 178, 182, 83 S.Ct. 227, 230, 9 L.Ed.2d 222 (1962); Rule 15(a), F.R.Civ.P. Here, however, defendant seeks no more than a declaratory disposition in its favor of the very issue raised in plaintiff's complaint: namely, whether defendant is liable under the Consultancy Agreement for debts arising after December 31, 1984. That issue is already before the court; and to duplicate it in a counter-

claim would serve no purpose. Leave to amend the counterclaim is therefore denied. *See Foman v. Davis, supra,* 371 U.S. at 182, 83 S.Ct. at 230; *Kaster v. Modification Systems, Inc.,* 731 F.2d 1014, 1018 (2d Cir.1984). The court has already granted plaintiff's motion for summary judgment on the existing counterclaim; it is dismissed in all respects with prejudice.

IT IS SO ORDERED.